**In re Jane DOE.**

No. 00–0140.

Supreme Court of Texas.

Feb. 25, 2000.

Enoch, J., concurred in part and filed a separate opinion, in which Baker, Hankinson, and O'Neill JJ., joined.

Owen, J., concurred in part and filed a separate opinion, in which Phillips, C.J., joined in part.

Hecht, J., filed a dissenting opinion, in which Abbott, J., joined.

## OPINION

Chief Justice PHILLIPS delivered the opinion of the Court as to Parts I–VI and a concurring opinion as to Part VII, all of which Justice GONZALES joins. Justice ENOCH, Justice BAKER, Justice HANKINSON, and Justice O'NEILL join in Parts I, II, and IV–VI of the Court's opinion and in the judgment. Justice OWEN joins in Parts I, II, and III of the Court's opinion and in the judgment. Justice HECHT and Justice ABBOTT join in Parts II and III of the Court's opinion.

This is a confidential appeal from a court of appeals' decision affirming a trial court's

denial of a minor's application for a court order authorizing her to consent to an abortion without notifying her parents. Our Court is called upon to determine what the Legislature intended in Texas's parental notification statute when it wrote that a court "shall enter an order" that a minor is "authorize[d] ... to consent to the performance of [an] abortion" if she demonstrates "by a preponderance of the evidence [that she] is mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents...." TEX. FAM.CODE § 33.003(i). We are not called upon to decide the constitutionality or wisdom of abortion. Arguments for or against abortion do not advance the issue of statutory construction presented by this case. Instead, our sole function in this case is to interpret and apply the statute enacted by our Legislature.

The trial court in this case concluded that although the minor "shows signs of being mature, she has not demonstrated that she is sufficiently well informed about the medical procedures and the emotional impact of the procedure." The court of appeals affirmed, and the minor has appealed to this Court. We conclude that in this case, the minor has not met the statutory standard. Because this Court has not previously provided guidance to trial and appellate courts about what a minor must show under section 33.003 of the Texas Family Code to demonstrate that she is mature and sufficiently well informed, we remand this case to the trial court in the interest of justice. In so doing, we direct that upon remand, the proceedings in the trial court must be concluded as if Doe's application had been filed the day after our opinion issues. *See* TEX. FAM.CODE § 33.003(h). In the event that the minor requires additional time after issuance of this opinion to prepare for a hearing, she may, of course, request an extension of time. *See id.*

## I

Jane Doe is a pregnant, unmarried minor. Her eighteenth birthday will occur within a few months. She lives at home with her parents, and she has not been emancipated. Pursuant to Family Code section 33.003, she sought an order from the trial court allowing her to consent to an abortion without having to notify either of her parents. *See* TEX. FAM.CODE § 33.003.

Jane Doe was represented by counsel of her choice, and as the Family Code requires, the trial court appointed a guardian ad litem. *See id.* § 33.003(e). At the conclusion of a hearing, the trial court denied Jane Doe's application and issued written findings and conclusions in accordance with Texas Family Code section 33.003(h). Jane Doe appealed to the court of appeals, which affirmed the trial court's judgment without an opinion. She now appeals to this Court. *See id.* § 33.004(f). She contends that she has conclusively established that she is mature and is sufficiently well informed to make a decision about terminating her pregnancy without notifying her parents. She also has presented a limited argument that the trial court erred in failing to conclude that notification would not be in her best interest. *See id.* § 33.003(i). Because she did not present this latter issue to the court of appeals, we will not consider it.

Before we turn to the merits of the issues before us, however, there are two significant procedural matters that we must resolve. The first is whether the Family Code prohibits us from releasing our opinions to the public in these types of matters. The second is what standard of appellate review applies in cases arising under sections 33.003 and 33.004 of the Family Code.

## II

■ Family Code sections 33.003 and 33.004 contain many provisions designed to ensure the minor's anonymity and the confidentiality of the judicial bypass proceed-

ing. Among these are provisions that, in effect, direct the trial court and the court of appeals *not to publicly disseminate their rulings.* *See* Tex. Fam.Code §§ 33.003(k),(*l* ); 33.004(c).

Family Code section 33.003 directs that a minor's application to the trial court, all other documents pertaining to the proceedings, and the trial court's ruling are confidential and privileged. *See* Tex. Fam. Code §§ 33.003(k), (*l* ). The statute is explicit about those who may receive notice of the trial court's ruling:

(*l* ) An order of the court issued under this section is confidential and privileged and is not subject to disclosure under Chapter 552, Government Code, or discovery, subpoena, or other legal process. The order may not be released to any person but the pregnant minor, the pregnant minor's guardian ad litem, the pregnant minor's attorney, another person designated to receive the order by the minor, or a governmental agency or attorney in a criminal or administrative action seeking to assert or protect the interest of the minor.

Tex. Fam.Code § 33.003(*l* ).

Similarly, Family Code section 33.004(c) prohibits the court of appeals from publishing its ruling:

(c) A ruling of the court of appeals issued under this section is confidential and privileged and is not subject to disclosure under Chapter 552, Government Code, or discovery, subpoena, or other legal process. The ruling may not be released to any person but the pregnant minor, the pregnant minor's guardian ad litem, the pregnant minor's attorney, another person designated to receive the ruling by the minor, or a governmental agency or attorney in a criminal or administrative action seeking to assert or protect the interest of the minor.

Tex. Fam.Code § 33.004(c).

The Code's judicial bypass provisions concerning appeals in this Court do not, however, contain directives regarding dissemination of opinions or rulings. The Family Code requires only that a "confidential appeal" shall be available to any pregnant minor to whom a court of appeals denies consent:

(f) An expedited confidential appeal shall be available to any pregnant minor to whom a court of appeals denies an order authorizing the minor to consent to the performance of an abortion without notification to either of her parents or a managing conservator or guardian.

Tex. Fam.Code § 33.004(f). The requirement of a "confidential appeal" is not an impediment to publishing our opinions. We can do so without disclosing the identity of the minor, the court of appeals, or the trial court.

As the head of the third branch of government with regard to civil matters, this Court has an obligation to provide guidance to lower courts through its published opinions. There would be no means of insuring consistency, uniformity, and predictability of the law if the court of last resort could not commit its analyses, reasoning, and decisions to writing in opinions and disseminate those opinions to the public. Without some explication from this Court of the meaning of "mature and sufficiently well informed," different courts around the state at both the trial and appellate level would surely arrive at very different constructions of what the statute requires. This result would undermine the rule of law that undergirds our whole system of justice.

By publicly announcing our construction of this statute, the Legislature and the public will know the meaning that we have ascribed to it, and can order their behavior accordingly. In particular, the people, through their elected representatives, will have full opportunity to change the law, if they so desire, in light of the way the judiciary is interpreting and applying it.

We note that we are not called upon to express an opinion about the constitutionality of the provisions of the Family Code

that prohibit the lower courts from making their rulings publicly available. Those questions must be decided another day.

### III

The second important procedural issue involves the standard of review that appellate courts are to apply in reviewing trial court rulings. Because section 33.004 is silent on this issue, we look to the standards of review we apply to other trial court decisions.

■ First, we must determine whether the "mature and sufficiently well informed" requirement is a question of fact or of law. Section 33.003 provides that the trial judge should determine these questions by "a preponderance of the evidence." TEX. FAM.CODE § 33.003(i). This requirement implies that the trial judge is to weigh the evidence and determine the credibility of the minor or any other witnesses. These are typical fact-finding functions, performed by a trial court only after hearing the minor's live testimony and viewing her demeanor.

■ Next, we determine whether the trial court's factual findings on these issues are subject to an abuse of discretion review standard or a legal and factual sufficiency review standard. The abuse of discretion standard applies when a trial court has discretion either to grant or deny relief based on its factual determinations. *See Bocquet v. Herring*, 972 S.W.2d 19, 20–21 (Tex.1998). This standard is especially appropriate when the trial court must weigh competing policy considerations and balance interests in determining whether to grant relief. *See General Tire, Inc. v. Kepple*, 970 S.W.2d 520, 526 (Tex.1998). Thus, the abuse of discretion standard is typically applied to procedural or other

trial management determinations. *See, e.g., National Med. Enters., Inc. v. Godbey*, 924 S.W.2d 123, 128 (Tex.1996)(attorney disqualification); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex.1995)(admission of evidence); *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex.1992)(discovery sanctions).

By contrast, in this case the trial court has no discretion over the order. The statute provides that if the court finds that the minor is "mature and sufficiently well informed," it "*shall* enter an order authorizing the minor to consent to the performance of the abortion without notification to either of her parents...." TEX. FAM. CODE § 33.004(i)(emphasis added). Furthermore, in determining whether a minor is "mature and sufficiently well informed," the trial court is not to weigh policy considerations; it simply makes a factual determination. When the trial court acts primarily as a factfinder, appellate courts normally review its determinations under the legal and factual sufficiency standards. *See Bocquet*, 972 S.W.2d at 21; *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994). We therefore apply that standard of review to this appeal.[1]

Unlike the courts of appeals, our Court may only engage in legal sufficiency review. *See* TEX. CONST. art. V, § 6. In reviewing legal sufficiency, however, we may set forth factors and principles for lower courts to follow in determining and reviewing whether a minor is "mature and sufficiently well informed" to make this decision without parental notification. *See Bocquet*, 972 S.W.2d at 21 (reasonableness and necessity of attorney's fees); *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 30–31 (Tex.1994)(gross negligence).

---

1. Justice Enoch's concurrence argues that the proper standard of review is abuse of discretion. Much of his argument is based on the premise that the facts will be undisputed. Although the hearing is unopposed, the testimony presented by the minor may be inconsistent, either on direct or after the trial court

has posed questions. Therefore, rather than simply applying the law to undisputed facts, the trial court must weigh all the evidence before it, including demeanor and credibility, to determine if the minor, by a preponderance of the evidence, has demonstrated that she is mature and sufficiently well informed.

**IV**

We turn next to the standard of proof the Legislature intended to require in the parental notification statute. The Texas parental notification statute was enacted against a backdrop of over two decades of decisions from the United States Supreme Court. One of the seminal opinions regarding minors and abortion is *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II* ). In *Bellotti* a state had enacted a statute that required parental consent before a physician could perform an abortion on a minor, with certain limited exceptions. A plurality of the Court reiterated in *Bellotti II* what a majority of the Court had previously held in *Planned Parenthood of Central Missouri v. Danforth*, 428 U.S. 52, 74, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976): " '[T]he State may not impose a blanket provision ... requiring the consent of a parent ... as a condition for abortion of an unmarried minor,' " and that it would be "inappropriate 'to give a third party an absolute, and possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy, regardless of the reason for withholding the consent.' " *Bellotti II*, 443 U.S. at 643, 99 S.Ct. 3035 (plurality opinion) (quoting *Danforth*, 428 U.S. at 74, 96 S.Ct. 2831). The *Bellotti II* plurality further concluded that parental consent statutes would not pass constitutional muster unless the state provided an alternative procedure in which a minor could receive authorization for an abortion. *Id.* (plurality opinion).

Thus, the plurality concluded that a minor must be permitted an opportunity to show "either: (1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests." *Id.* at 643–44, 99 S.Ct. 3035 (plurality opinion). With regard to the determination of maturity, "the peculiar nature of the abortion decision requires the opportunity for case-by-case evaluations of the maturity of pregnant minors." *Id.* at 643 n. 23, 99 S.Ct. 3035 (plurality opinion). The *Bellotti II* plurality also concluded that a parental bypass proceeding must maintain the anonymity of the minor and must be completed with "sufficient expedition to provide an effective opportunity for an abortion to be obtained." *Id.* at 644, 99 S.Ct. 3035 (plurality opinion). A majority of the United States Supreme Court has subsequently approved the *Bellotti II* parental bypass requirements. *See City of Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 439–442, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (*Akron I* ) (holding parental consent statute unconstitutional in light of *Bellotti II* ); *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502, 511–13, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (*Akron II* ) (declining to decide whether parental bypass was constitutionally required in a notification rather than a consent statute, but applying *Bellotti II* requirements). Our Legislature was obviously aware of this jurisprudence when it drafted the statute before us.

**V**

Against this backdrop our Legislature, like the legislatures of a number of other states, has chosen to require only parental *notification*, not parental *consent*. And like the other states that require only parental notification, our Legislature did not specify the particular information a minor must have before she can be considered "sufficiently well informed" to make the decision independently.[2]

2. *See* ARK.CODE ANN. § 20–16–804(1)(A)(Michie 1999); COLO.REV.STAT. ANN. § 12–37.5–107(2)(a)(1999); FLA. STAT. §§ 390.01115(3)(a) & (4)(c)(1999); GA.CODE ANN. § 15–11–114(c)(1999); 750 ILL. COMP. STAT. 70/25–25(d) (West 1999); KAN. STAT. ANN. §§ 65–6705(a) & (d) (1998); MD.CODE ANN., HEALTH §§ 20–103(a) & (c) (1991); MINN.STAT. § 144.343(6) (1998); MONT.CODE ANN. §§ 50–20–212(4) & (5) (1999); NEB.REV.STAT. § 71–6903(1) (1999);

■ The parental notification statute forbids a physician from performing an abortion on a pregnant, unemancipated minor without giving notice to the minor's parents at least 48 hours before the procedure. *See* Tex. Fam.Code § 33.002(a). But the act allows a pregnant minor who wants to have an abortion without notifying one of her parents to "file an application for a court order authorizing the minor to consent to the performance of an abortion without notification to either of her parents...." Tex. Fam.Code § 33.003(a). When a minor files such an application, the court "shall determine by a preponderance of the evidence" whether:

1. The minor is "mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents;" or
2. Notification would not be in the best interest of the minor; or
3. Notification may lead to physical, sexual, or emotional abuse of the minor.

Tex. Fam.Code § 33.003(i). If the court makes any of these determinations, the court "*shall* enter an order authorizing the minor to consent to the performance of the abortion without notification to either of her parents...." *Id.* Because the Legislature used the imperative word "shall," we conclude that when a minor meets the statutory threshold, the trial court must grant the application. *See* Tex. Gov't Code § 311.016(2).

■ Our focus in construing this statute is to determine the Legislature's intent; this we discern primarily from the plain meaning of the words chosen. *See, e.g., Surgitek, Bristol–Myers Corp. v. Abel,* 997 S.W.2d 598, 602 (Tex.1999); *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865 (Tex.1999); *Liberty Mutual Ins. Co. v. Garrison Contractors, Inc.,*

966 S.W.2d 482, 484 (Tex.1998). In section 33.003(i), the Legislature has succinctly stated that the minor must be "mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents...." Tex. Fam.Code § 33.003(i). The brevity of the requirement does not, however, mean that it is insubstantial. The Legislature undoubtedly intended the bypass procedure to be a meaningful one. In requiring that a minor demonstrate that she is mature and sufficiently well informed, the Legislature took into account the gravity and potential consequences of the irreversible decision to terminate a pregnancy, and sought to assure that the minor's decision was thoughtful and informed.

■ Thus, we conclude that a minor is "mature and sufficiently well informed to make the decision to have an abortion without notification to either of her parents" when the evidence demonstrates that the minor is capable of reasoned decision-making and that her decision is not the product of impulse, but is based upon careful consideration of the various options available to her and the benefits, risks, and consequences of those options. *See In re Anonymous,* 711 So.2d 475, 477 (Ala.Civ. App.1998); *In re Petition of Anonymous 1,* 251 Neb. 424, 558 N.W.2d 784, 788 (1997); *In re Petition of Anonymous 2,* 253 Neb. 485, 570 N.W.2d 836, 838–39 (1997); *In re Jane Doe,* 126 N.C.App. 401, 485 S.E.2d 354, 356 (1997). The decisions of a number of other state courts construing similar statutes, which were available to the Legislature at the time they enacted section 33.003(i), inform our interpretation. *See Ex Parte Anonymous,* 618 So.2d 722, 725 (Ala.1993); *In re Petition of Jane Doe for Waiver of Notice,* 19 Kan.App.2d 204, 866 P.2d 1069, 1074–75 (1994); *In re Mary Moe,* 18 Mass.App.Ct. 727, 469 N.E.2d

Nev.Rev.Stat. § 442.255(2) (1997); N.J. Stat. Ann. § 9:17A–1.7(d) (West 1999); Ohio Rev. Code Ann. §§ 2151.85(A)(4) & (C)(1) (Banks–Baldwin 1999); S.D. Codified Laws §§ 34–

23A–7(3) & 34–23A–7.1 (Michie 1999); Va. Code Ann. § 16.1–241(V) (Michie 1999); W. Va.Code § 16–2F–4(f) (1999); Wyo. Stat. Ann. § 35–6–118(b)(v)(B) (Michie 1999).

1312, 1315 (1984); *Cf. In re Anonymous,* 674 So.2d 1317, 1318 (Ala.Civ.App.1995); *In re Anonymous,* 655 So.2d 1052, 1054 (Ala.Civ.App.1995).

Obviously, whether a minor is mature and sufficiently well informed is a highly individualized decision that must take into account the diverse background and circumstances of each applicant for waiver of parental notification. An examination of decisions from other states' courts reveals consistent themes. All of the decisions wrestle with "mature" and "informed," two concepts that overlap to some extent, but which are also distinct. States make a distinction between the information, and the minor's ability to understand that information and deal with it responsibly.

The states that have written on this issue, including Alabama, Kansas, Massachusetts, Nebraska, North Carolina, and Ohio require that the minor has been informed as to the alternatives to abortion, to the nature of the abortion procedure and its risks, and the physical, emotional, and social consequences of either abortion or bringing the pregnancy to term. The Alabama Court of Civil Appeals has suggested that the information about the risks and options should be targeted to an individual's specific circumstances. *See In re Anonymous,* 650 So.2d 923, 925 (Ala.Civ. App.1994). But the courts are also careful to ensure that the minor understands that information, and has assimilated it in a mature way. To this end, they have inquired into how a minor might respond to certain contingencies, particularly assessing whether the minor will seek counseling in the event of physical or emotional complications. Many courts have assessed the minor's school performance and activities, as well as the minor's future and present life plans. A few courts have explicitly assessed the minor's character and judgment directly. Most of the decisions have also considered the minor's job experience and experience handling finances, particularly assessing whether the minor is aware of the financial obligations inherent in raising a child. Almost all courts conduct the maturity inquiry, either explicitly or implicitly, against the background circumstances of the minor's experience. These include the minor's relationship with her parents, whether she has social and emotional support, particularly from the male who would be a father, and other relevant life experiences.

## VI

◼ We conclude that a trial court should take into account the totality of circumstances the minor presents in determining whether she is mature and sufficiently well informed. In order to establish that she is sufficiently well informed, the minor must make, at a minimum, three showings.

First, she must show that she has obtained information from a health-care provider about the health risks associated with an abortion and that she understands those risks. That would include an understanding of the risks associated with the particular stage of the minor's pregnancy.

Second, she must show that she understands the alternatives to abortion and their implications. As with any medical procedure, part of making an informed decision is knowing the available alternatives. A minor should be able to demonstrate that she has given thoughtful consideration to her alternatives, including adoption and keeping the child. She should also understand that the law requires the father to assist in the financial support of the child. *See* Tex. Fam.Code § 154.001; *see also* Tex. Const. art. XVI, § 28 (garnishment of wages for court-ordered child support payments). She should not be required to justify why she prefers abortion above other options, only that she is fully apprised of her options.

Third, she must show that she is also aware of the emotional and psychological aspects of undergoing an abortion, which can be significant if not severe for some women. She must also show that she has

considered how this decision might affect her family relations. Although the minor need not obtain this information from licensed, professional counselors, she must show that she has received information about these risks from reliable and informed sources, so that she is aware of and has considered these aspects of the abortion procedure.

■ While a minor must demonstrate a knowledge and appreciation of the various considerations involved in her decision, she should not be required to obtain information or other services from any particular provider. Nor should she be required to meet with or review materials that advocacy or religious groups provide. The inquiry is whether she has obtained information on the relevant considerations from reliable sources of her choosing that enable her to make a thoughtful and informed decision.

■ A determination of maturity necessarily involves more trial court discretion. However, if a court determines that a minor has not demonstrated that she is mature enough to make a decision to undergo an abortion, then the court should make specific findings concerning its determination so that there can be meaningful review on appeal. Similarly, if a court concludes that a minor is not credible in some respect that directly relates to its determination of maturity, the court should make specific findings in that regard as well.

■ A minor who can show that she is sufficiently well informed may also establish in the process that she is mature. In making a determination of maturity, there are, however, some criteria that should not be relied upon as conclusively showing *immaturity*. The United States Supreme Court has said that one of those is the fact, standing alone, that the pregnant female is a minor. That Court has also admonished that states and courts "may not make a blanket determination that *all* minors ... are too immature to make this decision or that an abortion never may be in the minor's best interests without parental approval." *Akron I*, 462 U.S. at 440, 103 S.Ct. 2481. A child's age, educational background or grades in school, while indicative of some level of maturity, are not conclusive on the issue of maturity. Nor is participation in extra-curricular activities. It should also go without saying that a minor's socio-economic status should not bear on the decision.

## VII

As discussed earlier in this opinion, the standard of review is legal sufficiency. Thus, unless Jane Doe has shown as a matter of law that she is mature and sufficiently well informed, we would ordinarily affirm the judgment of the court of appeals. After reviewing this record, we conclude that she has not established as a matter of law that she is sufficiently well informed to make the decision to have an abortion performed without notifying her parents. But because this is a matter of first impression, in the interests of justice, we remand to the trial court for further hearing and consideration.[3]

## CONCLUSION

For the reasons we have discussed, we reverse the judgment of the court of appeals and remand this case to the trial court for further hearing and consideration. We have already indicated the time stricture within which further proceedings in the trial court must be concluded. Importantly, the court should schedule its proceedings with the additional consideration that it must maintain the minor's confidentiality. Section 33.003 allows the trial court to give proceedings of this type "precedence over other pending matters to the extent necessary to assure that the

---

**3.** Although Texas Parental Notification Rule 3.3(b) does not allow a court of appeals to remand, the rules are silent regarding this Court. Consequently, we are not prohibited from remanding.

court reaches a decision promptly." TEX. FAM.CODE § 33.003(h).

Justice ENOCH filed a concurring opinion, in which Justice BAKER, Justice HANKINSON, and Justice O'NEILL join.

Justice OWEN filed a concurring opinion, in which Chief Justice PHILLIPS joined as to Parts I and III.

Justice HECHT filed a dissenting opinion, in which Justice ABBOTT joins.

Justice ENOCH, joined by Justice BAKER, Justice HANKINSON, and Justice O'NEILL, concurring.

I join parts I, II, IV, V, and VI of the Court's opinion, and I join the Court's judgment remanding this appeal in the interests of justice. I disagree with parts III and VII for two reasons. One, I believe the standard of review on appeal in a proceeding under the parental notification act should be abuse of discretion, not factual or legal sufficiency. And two, I emphasize that in a proceeding under the parental notification act, our disposition today, remand, is inappropriate except in extraordinary circumstances. Because today we are construing the parental notification act for the first time, and because I agree it is in the interests of justice to give Jane Doe an opportunity to meet the statutory standard as the Court has construed it, I conclude this case presents exceptional circumstances warranting a remand.

I join the Court's construction of the statutory phrase "mature and sufficiently well-informed to make the decision to have an abortion performed without notification to either of her parents."[1] But I do not agree that the standard of review for appellate review of a trial court's decision that a minor is not mature or sufficiently well informed is factual and legal sufficiency. Because of the nature of the unusual proceedings contemplated under sections 33.003 and 33.004 of the Family Code, I

would conclude that the appropriate standard of review is abuse of discretion.

Unlike virtually any other judicial proceeding I am aware of, this proceeding is not only "non-adversarial," but notice to the very persons (besides the minor) likely to have the most interest in the outcome of the hearing—the parents who stand not to be notified of their minor child's decision—is prohibited. And the secrecy of the proceeding assures that the hearing will be entirely one-sided.

Because of the nature of this proceeding, then, all the evidence in the record will be undisputed. But the standard the Legislature chose for trial courts to apply in determining whether a minor is "mature and sufficiently well informed"—preponderance of the evidence—is typically associated with weighing conflicting evidence after an adversarial proceeding. Thus, we have an anomalous situation—the Legislature directs that the minor must demonstrate by a preponderance of the evidence (which generally means more likely than not) that she is mature and sufficiently well-informed, yet because the minor is the only party presenting evidence on these elements, there is no other evidence against which to weigh it to see if it is more likely than not.

A preponderance standard for trial court hearings cannot establish the standard of review on appeal, precisely because of the unique, unopposed nature of the proceedings. Since the hearing in the trial court is not adversarial and no weighing of disputed evidence can occur, there is no basis for appellate courts to defer to the trial courts' fact-finding function, as we would in any other ordinary appeal. In other words, unless the evidence in the record raises a question about the minor's credibility, the trial court is not free to simply disregard the undisputed facts provided by the minor. Whether those undisputed facts demonstrate that the minor is "mature and sufficiently well informed to make

1. TEX. FAM.CODE § 33.003(i).

the decision to have an abortion" is a legal question. And as we have said before, trial courts have no discretion in determining what the law is or in applying the law to the facts.[2]

Thus, in these unique, non-adversarial, parental notification proceedings, I would hold that Texas appellate courts must review a trial court's decision under an abuse of discretion standard. That is, did the trial court correctly apply the law to the undisputed facts in the record?

Moreover, again because of the unusual nature of the proceedings, I believe this Court should review the trial court's decision, rather than the court of appeals' ruling, for abuse of discretion because a case under the parental notification statute reaches us only when the court of appeals has affirmed the trial court's denial of a minor's application for waiver of parental notice. Thus, the focus in this Court should remain on whether the trial court misapplied the law to the undisputed facts.[3]

An abuse of discretion standard would not diminish the trial court's role under the statute. It remains the trial court's role to determine the witness's credibility, as the trial court hears the minor's testimony in person and is in the best position to assess the minor's credibility. But the trial court's discretion to make credibility determinations should not be unfettered. The trial court cannot simply disregard the minor's uncontested testimony. To decide otherwise—that a trial court is free to disregard the undisputed evidence despite no question of veracity—would put the trial court's legal decision beyond review. Consequently, whether the trial court can disregard the undisputed evidence should depend on whether the record before the court raises a significant, legitimate question about the minor's veracity.

As mentioned, the parental notification statute prohibits not only general notice of the proceeding, but specific notice to the very people who likely would have the greatest interest in the minor's application—her parents.[4] It appears to me, therefore, that the Legislature intended for these proceedings to be unopposed in all circumstances. That means that the Legislature did not intend for the trial courts to assume the role of an opposing party and reject the undisputed evidence in the absence of a reasonable, factual basis to question the minor's credibility. Under similar circumstances, other courts have also concluded that the trial court may not simply choose to discredit the evidence offered by the minor unless it is "improbable or unreasonable or is shown to be untrustworthy."[5] In the case before us, for example, if the record revealed that, despite her testimony that she had conducted Internet research, Doe did not have access to a computer, the record itself would raise a significant, legitimate question about her veracity. (Of course, no such questions appear in this record.)

Furthermore, I note that throughout the Family Code a trial court makes decisions bearing on the best interests of a child. And appellate courts review those decisions under an abuse of discretion standard.[6] This fact strengthens my conviction that an abuse of discretion standard should apply here. In this case, the best interests of the child is the subject of two of the three inquiries that the statute sets forth. The same level of review should apply to the trial court's decisions regardless of the provision under review. But the Court would apply a different level of review to the trial court's decision relating

---

2. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

3. *See, e.g., Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 918 (Tex.1985).

4. *See* TEX. FAM.CODE § 33.003(k).

5. *In the Matter of the Petition of Jane Doe*, 19 Kan.App.2d 204, 866 P.2d 1069, 1074 (1994).

6. *See Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex.1982); *Green v. Remling*, 608 S.W.2d 905, 908 (Tex.1980).

to maturity and adequacy of information. This cannot but lead to confusion and inconsistency.

Nonetheless, having concluded that the standard of review should be abuse of discretion, I cannot say that the trial court in this case demonstrably acted "without regard to guiding legal principles." [7] The primary reason for this is that we have not before had the opportunity to provide guiding legal principles. That this trial court may not have properly comprehended what the Legislature meant by the phrase "mature and sufficiently well informed" does not equate to an abuse of discretion in this instance, where no published appellate decision existed to guide the trial court. Thus, this case presents just such an exceptional circumstance and a remand in the interest of justice is warranted. [8]

But now that this Court has announced the guiding legal principles, trial courts are not free to disregard those principles and substitute their own for determining whether a minor demonstrates that she is mature and sufficiently well informed to make this most difficult of decisions. And while the possibility exists that other exceptional circumstances in some future situation might also warrant a remand, I emphasize that such a result is contemplated neither by the statute [9] nor by our rules. [10] The time-sensitive nature of the proceedings and the constitutional implications of the specter of protracted hearings and appeals counsel very strongly against remand as an appellate disposition. And our rules expressly preclude a court of appeals from remanding. [11]

But here, where the minor has presented a record that demonstrates a high level

of maturity, and where neither the minor nor the trial court had the benefit of guidance from this (or any other appellate decision) on the meaning of the phrase "mature and sufficiently well informed," I believe that it is in the best interest of justice to allow the minor the opportunity to meet the test the Court elaborates today for waiver under the act of notification to her parents to consent to the procedure. Thus, I join the Court's judgment.

Justice OWEN, joined by Chief Justice PHILLIPS as to Parts I and III, concurring.

I join in the Court's judgment reversing the court of appeals and remanding this matter to the trial court for further proceedings, but I cannot join the opinion of the Court in parts IV–VII. The Court refuses to give full effect to the statutory mandate that before a minor can obtain authorization to proceed with an abortion without notifying one of her parents, she must be "mature and sufficiently well informed to make the decision." TEX. FAM. CODE § 33.003(i). The Court's interpretation of "sufficiently well informed" falls short of what the Legislature had in mind. Most minors will, with the assistance of counsel, be able to meet the requirements set by the Court, which are minimal. The plain language of the Family Code and its historical backdrop require a more substantive showing.

## I

The history of how and why the bypass procedure in section 33.003 of the Family Code came to be sheds light on how it should be construed. Over twenty years ago, the United States Supreme Court

---

7. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex. 1998).

8. *See* TEX.R.APP. P. 60.3.

9. *See* TEX. FAM.CODE § 33.004(b).

10. *See* TEX PARENTAL NOTIFICATION RULES & FORMS 3.3(b).

11. *See id.* ("The court of appeals ... must issue a judgment affirming or reversing the trial court's order denying the application. If the court of appeals reverses the trial court order, it must also state in its judgment that the application is granted.").

handed down two landmark decisions dealing with minors and abortion. *See Planned Parenthood of Central Mo. v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976); *Bellotti v. Baird*, 428 U.S. 132, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976) (*Bellotti I*) (issued the same day as *Danforth*). In *Danforth*, the Supreme Court held for the first time that a parent does not have an absolute "veto" over the decision of a minor to terminate her pregnancy:

> [T]he State may not impose a blanket provision ... requiring the consent of a parent ... as a condition for abortion of an unmarried minor.... [T]he State does not have the constitutional authority to give a third party an absolute, and possibly arbitrary, veto over the decision of the physician and his patient to terminate the patient's pregnancy, regardless of the reason for withholding consent.

*Danforth*, 428 U.S. at 74, 96 S.Ct. 2831. The Court further concluded that "[a]ny independent interest the parent may have in the termination of the minor daughter's pregnancy is no more weighty than the right of privacy of the competent minor mature enough to have become pregnant." *Id.* at 75, 96 S.Ct. 2831.

In so holding, the Supreme Court said that it did not mean to suggest that "every minor, regardless of age or maturity, may give effective consent for termination of her pregnancy." *Id.* at 75, 96 S.Ct. 2831. Consistent with that statement, the Court registered its concern that there are "unquestionably greater risks of inability to give an informed consent" for a minor. *See Bellotti I*, 428 U.S. at 147, 96 S.Ct. 2857. The Court suggested that a statute requiring parental consent before a minor could obtain an abortion might be constitutional if there were also a provision that allowed the minor to go to court to obtain consent. *Id.*

In *Bellotti II*, a plurality of the Supreme Court adopted what the Court had previously suggested in *Bellotti I* by holding that parental consent statutes would not pass constitutional muster unless the State provided an alternative procedure in which a minor could receive authorization for an abortion. *See Bellotti v. Baird*, 443 U.S. 622, 646–47, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (plurality opinion) (*Bellotti II*). The *Bellotti II* plurality concluded that a minor must be permitted an opportunity to show "either: (1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests." *Id.* at 643–44, 99 S.Ct. 3035. With regard to the determination of maturity, *Bellotti II* stated that "the peculiar nature of the abortion decision requires the opportunity for case-by-case evaluations of the maturity of pregnant minors." *Id.* at 643 n. 23, 99 S.Ct. 3035. The *Bellotti II* plurality also concluded that a parental bypass proceeding must maintain the anonymity of the minor and must be completed with "sufficient expedition to provide an effective opportunity for an abortion to be obtained." *Id.* at 644, 99 S.Ct. 3035.

A majority of the United States Supreme Court has subsequently approved the *Bellotti II* parental bypass requirements. *See City of Akron v. Akron Ctr. for Reprod. Health, Inc.*, 462 U.S. 416, 439–42, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983) (*Akron I*) (holding parental consent statute unconstitutional in light of *Bellotti II*); *Ohio v. Akron Ctr. for Reprod. Health*, 497 U.S. 502, 510–13, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (*Akron II*) (declining to decide whether parental bypass was constitutionally required in a notification rather than a consent statute, but applying *Bellotti II* requirements).

A question specifically left open in United States Supreme Court decisions is whether the parental bypass procedure set forth above is constitutionally mandated when a statute requires only that a parent be notified that the minor is about to undergo an abortion as opposed to a statute

that requires parental consent. *See, e.g., Lambert v. Wicklund*, 520 U.S. 292, 295, 117 S.Ct. 1169, 137 L.Ed.2d 464 (1997) (per curiam); *Akron II*, 497 U.S. at 510, 110 S.Ct. 2972. Nevertheless, there is reasoning in *Bellotti II* that would suggest that the United States Supreme Court might hold that bypass procedures are necessary in notification statutes. The statute under consideration in *Bellotti II* required that a parent be notified when a minor brought judicial proceedings to obtain consent. *See* 443 U.S. at 646, 99 S.Ct. 3035. The Supreme Court struck down this provision, observing " 'there are parents who would obstruct, and perhaps altogether prevent, the minor's right to go to court.' " *Id.* at 647, 99 S.Ct. 3035 (quoting the district court). The Court continued, stating that every minor must have the opportunity to go to court without first notifying a parent:

> [M]any parents hold strong views on the subject of abortion, and young pregnant minors, especially those living at home, are particularly vulnerable to their parents' efforts to obstruct both an abortion and their access to court. It would be unrealistic, therefore, to assume that the mere existence of a legal right to seek relief in superior court provides an effective avenue of relief for some of those who need it the most.

* * *

> *[E]very minor must have the opportunity—if she so desires—to go directly to a court without first consulting or notifying her parents.* If she satisfies the court that she is mature and well enough informed to make intelligently the abortion decision on her own, the court must authorize her to act without parental consultation or consent.

*Id.* (plurality opinion) (emphasis added).

Undoubtedly cognizant of these holdings and admonitions of the United States Supreme Court, the Texas Legislature enacted amendments to the Family Code that require parental notification before a minor may obtain an abortion, but the Legis-

lature also included a bypass provision. *See* TEX. FAM.CODE §§ 33.002, 33.003. The bypass procedures substantially track those set forth in *Bellotti II. See id.* § 33.003. A minor may apply to a court for an order authorizing her to consent to an abortion without notification of a parent or guardian. *See id.* The trial court may not authorize a minor to consent to an abortion unless it determines by a preponderance of the evidence

> whether the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents or a managing conservator or guardian, whether notification would not be in the best interest of the minor, or whether notification may lead to physical, sexual, or emotional abuse of the minor.

*Id.* § 33.003(i).

## II

The bypass procedure in section 33.003 does not mean, however, that the Legislature intended for a minor to proceed with an abortion based on a minimal showing. The Legislature has required that the minor be mature and sufficiently well informed to make the decision. In determining what the Legislature meant by those terms, it again must be borne in mind that decisions of the United States Supreme Court have dominated abortion law. There is a substantial body of law from that Court regarding what a state may and may not require to demonstrate a woman's informed consent to an abortion. That law should guide interpretation of section 33.003.

Given the context in which section 33.003 of the Family Code was enacted, I can only conclude that the Legislature intended to require minors to be informed about the decision to have an abortion to the full extent that the law, as interpreted by the United States Supreme Court, will allow. Accordingly, I turn to what the United States Supreme Court has said re-

garding informed consent and what states may require.

## III

The United States Supreme Court has made it clear that when a woman is making a decision about abortion, particularly when she is a minor, a state can require consideration of factors in addition to the physical risks of the procedure. Those include recognition that there are profound philosophic arguments surrounding abortion, consideration of the impact that the procedure will have on the fetus, an understanding that there may be an emotional and psychological impact following an abortion and later in life, and consideration of how the decision to obtain an abortion may impact present and future familial relationships.

With regard to the philosophic aspects of the abortion decision, a majority of the Court observed in *Akron II* that:

A free and enlightened society may decide that each of its members should attain a clearer, more tolerant understanding of the profound philosophic choices confronted by a woman who is considering whether to seek an abortion. Her decision will embrace her own destiny and personal dignity, and the origins of the other human life that lie within the embryo.

*Akron II,* 497 U.S. at 520, 110 S.Ct. 2972.

Other members of the Supreme Court again acknowledged the philosophic and social aspects of the abortion decision in *Planned Parenthood v. Casey,* 505 U.S. 833, 872, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (plurality opinion). They further acknowledged that when an adult woman is considering whether to have an abortion, a state may take steps to ensure that the decision is thoughtful and informed:

Though the woman has a right to choose to terminate or continue her pregnancy before viability, it does not at all follow that the State is prohibited from taking steps to ensure that this choice is thoughtful and informed. Even in the earliest stages of pregnancy, *the State may enact rules and regulations designed to encourage her to know that there are philosophic and social arguments of great weight that can be brought to bear in favor of continuing the pregnancy to full term* and that there are procedures and institutions to allow adoption of unwanted children as well as a certain degree of state assistance if the mother chooses to raise the child herself. " '[T]he Constitution does not forbid a State or city, pursuant to democratic processes, from expressing a preference for normal childbirth.' " It follows that *States are free to enact laws to provide a reasonable framework for a woman to make a decision that has such profound and lasting meaning.* This, too, we find consistent with *Roe* 's central premises, and indeed the inevitable consequence of our holding that the State has an interest in protecting the life of the unborn.

*Id.* at 872–73, 112 S.Ct. 2791 (citation omitted) (emphasis added).

In *Casey,* the Chief Justice, joined by three other Justices, agreed with the plurality that the informed consent provisions at issue did not unduly burden the abortion decision. *See id.* at 969, 112 S.Ct. 2791 (Rehnquist, C.J., concurring in the judgment in part and dissenting in part). In the Chief Justice's separate opinion, the concurring Justices observed that a state "has an interest in preserving unborn life," and that it may take steps to ensure "that a woman's decision to abort is a well-considered one, and reasonably furthers the State's legitimate interest in maternal health and in the unborn life of the fetus." *Id.* The Chief Justice's opinion further concluded that a 24–hour waiting period designed to give a woman time to reflect on her decision " 'is surely a small cost to impose to ensure that the woman's decision is well considered in light of its certain and irreparable consequences on fetal life, and the possible effects on her own.' "

*Id.* at 969–70, 112 S.Ct. 2791 (quoting *Akron I,* 462 U.S. at 474, 103 S.Ct. 2481 (O'Connor, J., dissenting)).

Initially, the Supreme Court had struck down as unconstitutional statutes that were fairly specific in their requirements for informed consent to an abortion. *See Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 759–65, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986); *Akron I,* 462 U.S. at 442–45, 103 S.Ct. 2481. However, in *Casey,* a majority of the Justices overruled *Thornburgh* and *Akron I,* at least in part. *See Casey,* 505 U.S. at 881–87, 112 S.Ct. 2791 (plurality opinion); *id.* at 966–69, 112 S.Ct. 2791 (Rehnquist, C.J., concurring in the judgment in part and dissenting in part). Although the constitutional limits on what a state may require for informed consent are not entirely clear after the Supreme Court's decision in *Casey,* it is clear that a state may require a "thoughtful and informed" decision that encourages a woman to consider that there are "philosophic and social arguments of great weight that can be brought to bear." *Casey,* 505 U.S. at 872, 112 S.Ct. 2791 (plurality opinion); *see also Akron II,* 497 U.S. at 520, 110 S.Ct. 2972. With regard to the emotional and psychological consequences of an abortion for a minor, a majority of the Supreme Court in *Akron II* said: " 'The medical, emotional, and psychological consequences of an abortion are serious and can be lasting; this is particularly so when the patient is immature.' " *Akron II,* 497 U.S. at 519, 110 S.Ct. 2972 (quoting *H.L. v. Matheson,* 450 U.S. 398, 411, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981)).

## IV

Today, this Court refuses to acknowledge the foregoing body of law or the likelihood that our Legislature relied on it when it said that a minor must be "sufficiently well informed to make the decision to have an abortion." The Court chooses to ignore that the Legislature intended section 33.003 to encompass factors other than physical risk to the pregnant minor and alternatives to abortion. The Legislature did not intend for the "mature and sufficiently well informed requirement" of section 33.003 to have as limited a focus as the Court ascribes to it. I would hold that a minor must demonstrate more.

The Court properly requires a minor to consult a health-care provider about the general risks of an abortion. But that is insufficient. There may be risks that are heightened for or unique to an individual. A minor cannot make a sufficiently well-informed decision about an abortion if she does not know the risks to *her* of that procedure. In this regard, the Family Code expressly allows a pregnant, unmarried minor to consent to medical treatment by a physician, short of an abortion itself. *See* Tex. Fam.Code § 32.003(a)(4).

The Court recognizes that just as there are physical risks associated with an abortion, there are emotional and psychological consequences, which can be significant for some women. But the Court's treatment of this aspect of the abortion decision— one of *the* most important considerations—is superficial. I would require a minor to demonstrate that she has sought and obtained meaningful counseling from a qualified source about the emotional and psychological impact she may experience now and later in her life as a result of having an abortion. She should be able to demonstrate to a court that she understands that some women have experienced severe remorse and regret. She should also indicate to the court that she is aware of and has considered that there are philosophic, social, moral, and religious arguments that can be brought to bear when considering abortion. *See generally Casey,* 505 U.S. at 872, 112 S.Ct. 2791 (plurality opinion). A court cannot, of course, require a minor to adopt or adhere to any particular philosophy or to profess any religious beliefs. But requiring a minor to exhibit an awareness that there are issues, including religious ones, surrounding the abortion decision is not prohibited by the

Establishment Clause. *Cf. Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (holding that a statute must have a secular legislative purpose, that its principal or primary effect must be one that neither advances nor inhibits religion, and that it must not foster an excessive government entanglement with religion). The State's statutorily expressed interest in section 33.003 is to ensure a well-informed decision, which includes a mature understanding of all issues surrounding the decision to have an abortion.

An informed appreciation of the emotional and psychological aspects of terminating a pregnancy includes an understanding of the impact the procedure will have on the fetus. As Justices O'Connor, Kennedy, and Souter observed in *Casey,* failure to obtain a full understanding of this aspect of the procedure can lead to "devastating psychological consequences" afterwards:

> Nor can it be doubted that most women considering a abortion would deem the impact on the fetus relevant, if not dispositive, to the decision. In attempting to ensure that a woman apprehend the full consequences of her decision, the State furthers the legitimate purpose of reducing the risk that a woman may elect an abortion, only to discover later, with devastating psychological consequences, that her decision was not fully informed.

*Casey,* 505 U.S. at 882, 112 S.Ct. 2791.

In this same vein, these Justices explained, "[I]n order for there to be informed consent to a kidney transplant operation the recipient must be supplied with information about risks to the donor as well as risks to himself or herself." *Id.* at 883, 112 S.Ct. 2791. No less should be required for an abortion.

The Court today gives a nod to the fact that a decision to have an abortion may impact relationships with family members. I would require a minor to demonstrate that she has thoughtfully considered the potential impact on her relationships with her parents and other family members if they learn now or sometime in the future that she has had an abortion. She should also exhibit some consideration of how this decision may impact her future relationships, such as those she may have with a husband or future children. A minor should also have considered the impact that continuing her pregnancy would or might have on these relationships.

While a minor must demonstrate a knowledge and appreciation of the various considerations involved in her decision, I agree with the Court that she should not be required to obtain counseling or other services from a particular provider. The internet should not, however, suffice. Nor should advice from laypersons who are not specifically trained and experienced in counseling pregnant minors suffice. The "State's interest is in ensuring that the woman's consent is informed and unpressured; the critical factor is whether she obtains the necessary information and counseling from a qualified person, not the identity of the person from whom she obtains it." *Akron II,* 497 U.S. at 518, 110 S.Ct. 2972. I note, however, that a majority of the Supreme Court has observed that " '[i]t seems unlikely that [a minor] will obtain adequate counsel and support from the attending physician at an abortion clinic, where abortions for pregnant minors frequently take place.' " *H.L. v. Matheson,* 450 U.S. 398, 410, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981) (quoting *Planned Parenthood v. Danforth,* 428 U.S. 52, 91, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976) (concurring opinion)). By the same token, it seems unlikely that a minor would obtain all the information necessary for a well-informed decision about proceeding with an abortion, such as medical information, solely from a religious organization or an advocacy group.

## V

I agree with the Court that Jane Doe has not established as a matter of law that

she is sufficiently well informed to make the decision to have an abortion performed without notification of one of her parents. With regard to the emotional and psychological consequences of an abortion, Jane Doe testified that she understood that there "is some emotional factor that can distress you and there is a slight risk of infection, not much." When asked if she anticipated seeking additional counseling if she were authorized by the Court to consent to an abortion, she said, "I haven't thought about it, but I think I do not need further counseling. I feel that my decision, and [sic] once it is followed through, would be fine. I am aware of it." She also testified that she had talked with an adult relative who had an abortion as a minor. That relative told Jane Doe that she has not regretted her decision. Jane Doe had also talked to two of her friends who had become pregnant as minors and were raising their respective children. One was of college age and told Jane Doe that "she really wishes that she hasn't [sic] had her child." This friend is currently unable to attend college or to support herself and her child, and she intends to move back in with her parents. Jane Doe's other friend is fifteen and has married the father of her child. Jane Doe perceives that they are having "a very hard life," and her friend told her that "they wish they could take it back." Jane Doe also talked to a friend who has had an abortion. That friend told her that her own decision to have an abortion was "a good thing" and that she does not regret it.

The fact that Jane Doe has sought advice from friends and family indicates that she is seeking information as a mature person would do. Minors in Jane Doe's position should not be discouraged from asking for counsel and support from people who know and care about them. But talking to friends and family and obtaining anecdotal information is not equivalent to receiving in-depth counseling and information from sources qualified by training and experience. She expressed no appreciation that many women experience emotional and psychological problems as a consequence of their decision or why that is so.

With regard to alternatives to abortion, Jane Doe exhibited only the most superficial consideration. Finally, she did not demonstrate that she has considered the impact a decision to have an abortion might have on her relationships with her parents or others or her future relationships.

Because Jane Doe's proof was deficient, the trial court did not err in denying her application. I agree with the Court, however, that because no court has ever construed section 33.003, this matter should be remanded in the interest of justice.

Accordingly, I join only in parts I, II, and III of the Court's opinion, and I join the judgment.

Justice HECHT, joined by Justice ABBOTT, dissenting.

The Court today deals a heavy blow to parents' fundamental, constitutional rights to raise their children, rights the Legislature had absolutely every intention of protecting by passing the Parental Notification Act in 1999.[1] Described by one of its sponsors, Senator Florence Shapiro, as a "parental rights bill", the Act was plainly meant to encourage minors to seek their parents' advice and counsel in making what the United States Supreme Court has sympathetically called the "grave and indelible"[2] decision whether to have an abortion. The Act permits a judge to authorize a minor to make the decision herself if she is "mature and sufficiently well informed". But, explains the Court, all that really means is that a minor must know something of the health risks of the abortion procedure (which is not too hard,

---

1. TEX. FAM. CODE §§ 33.001–.011. All statutory references are to the Family Code unless otherwise noted.

2. *Bellotti v. Baird*, 443 U.S. 622, 642, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II*).

since for most women the physical risks are easily assessed), the alternatives to abortion (although she need not explain her choice among them), and, from "reliable and informed sources",[3] whatever that means, the emotional and psychological aspects of having an abortion. To think that a minor should choose abortion based merely on such antiseptic considerations trivializes the decision. As the Court reads the statute, no one need counsel a minor, as her parents should if they were told of her situation, that the family, social, moral, and religious aspects of her decision may radically affect her life, her family, and her future. Of such things—the really important part of the calculus of the abortion decision—a minor can be largely unappreciative and still be, in the Court's view, well informed. She need not have the benefit of differing viewpoints; she may obtain all her information from abortion proponents. "Well informed", for the Court, means only that a minor has thought about what she knows, not that she knows what to think about.

The Court does not base its statutory interpretation of "mature" and "well informed" on the ordinary meanings of those words, or on the purposes the Legislature intended them to achieve, or on the United States Supreme Court cases from which they were undoubtedly drawn, but on its own predilections. Other states' laws cited by the Court vary widely, some specifying the information a woman must be given, others prescribing only a general standard, and none shedding more than a faint light on the proper construction of Texas' statute. The result of today's decision is that it is not much harder now for a minor to obtain an abortion without telling her parents than it was before the Parental Notification Act was passed. Mostly, the Legislature has wasted a lot of time and energy. Before the statute a minor needed a willing clinic; now she just needs a lawyer, whose fees will be paid by the State.

The essential intent of the Parental Notification Act, as I read it, is that if the State is going to cut off a parent's right to advise a minor about her pregnancy, and to authorize the minor to choose abortion without the benefit of parental involvement, then the State must ensure that the minor has had the same kind of assistance in making her decision that a parent should provide. The last thing the State should want to hear is a minor's belated cry: "Why didn't someone tell me?" It is precisely that kind of assistance that the Legislature intended to ensure but the Court ignores.

Because I believe the Court's construction of the Act conflicts with its language, purposes, and sources, I dissent.

## I

Jane Doe will be eighteen years old in a few months. She is a high school senior with a high-"B" or low-"A" grade average, is involved in some extracurricular activities, and has a part-time job. She has never been married and lives at home with both her parents. She has a boy friend, a recent high school graduate, who is attending college. Doe and her boy friend have been, in her words, "sexually active", and Doe thinks her mother is aware of that fact, although they do not discuss it. Doe is not sure whether her father is aware that she has had sex.

Doe has used birth control pills for years, but about ten weeks ago she discovered she was pregnant. About a month ago she went to a Planned Parenthood office where she received some information about abortion and, in her words, "partial counseling". A week later she applied to the trial court for authorization to have an abortion without notifying her parents.

At the hearing, Doe was asked what kind of information she had obtained and how she had made her decision. Her entire testimony on this subject is as follows:

---

**3.** *Ante* at 256–57.

Q    And what kind of information did you look at to evaluate your options?

A    I got information on abortion and that procedure and what goes on with it and process of adoption and what it would actually be to have the child and I looked them over and I decided the abortion would be the best for me personally.

Q    Briefly describe for the Court, I mean briefly, your understanding of what the abortion procedure entails.

A    Okay. Well, I know I would have to get up and go to Planned Parenthood early and take a slight sedative, so be less painful, and they would flush it out and suck out, remove it, and I would have to go out—to go back in a month to a checkup, make sure there is no infection, no hemorrhaging, and that's pretty much how they remove it.

Q    Did the information that you examined include information about medical risks associated with abortion?

A    Well, there is a slim chance of death, a very, very rare. It is a pretty safe procedure, safer than actually having a child. There is some emotional factor that can distress you and there is a slight risk of infection, not much. It is a pretty safe procedure.

Q    Did you also attempt to find any information on alternatives to abortion?

A    Yes, I looked at other information such as adoption and actually having the child.

Q    And what information did you look at, what information did you evaluate in deciding to get an abortion as opposed to pursuing one of those other options?

A    Well, I just thought about my options and what would be best for me and actually the child and abortion in the long run I see as being most positive and best one there is.

Q    Could you explain to the Court why you made that decision?

A    Well, for me I feel if I were to have the child, my parents, they would be slightly upset to actually know that I became pregnant and they are very against abortion. So, first of all, they wouldn't even give me that chance to have an abortion. And I am planning after I graduate this year to go off [from home] to college. And I would like to pursue my own career. And I feel if I had the child I couldn't do any of that now and be a major setback. And I don't favor the adoption. I know it could be done, but if I were to go nine months having this child, I would feel to keep it. But that is—I already decided that would be, would be holding me back from my future, what I want to become. So, I decided abortion would be overall the best solution.

Doe has not consulted a physician. She testified that she had talked with a close relative who had had an abortion when she was 17. Doe's entire account of the conversation was that "she told me how she felt about it and what went on." Doe's guardian told the trial court that Doe's conversations with her relative "were pretty limited in terms of having the real advice". Doe also testified that she had spoken with three friends. One, a high school graduate, had a child and could not go to college but had to move in with her parents. Another, age 15, was, in Doe's words, "trying to go to school and have her baby, you know," and her parents had forced her to marry. In Doe's words: "[T]hey both have a very hard life right now and they say they wish they could take it back." A third had had an abortion and felt strongly that it was, according to Doe, "a good thing that she had it done so she can look into the future and say she's glad she had this done". Doe did not talk with anyone else about her decision. No one she spoke with expressed any reservations about her having an abortion or about abortion in general.

Doe's guardian asked her to get counseling at a crisis pregnancy center, and she

made an appointment to do so, but she was unable to locate the office. She testified that she "did further research over the internet, different sites, different places, for how they feel about it, you know, what their procedures were about. So, I looked up on my own." Doe did not give further specifics about her internet research. Doe has not spoken with a member of the clergy. Asked whether she thought she needed any further counseling on the abortion procedure or alternatives to it, she said: "I haven't thought about it, but I do not think I need further counseling. I feel that my decision, and once it is followed through, would be fine. I am aware of it."

Asked why she did not want to involve her parents in her decision, Doe testified as follows:

Q    Could you briefly describe for the Court, you have talked a little bit, but maybe a little bit more information, as to why it is you don't believe you can tell your parents about your decision to have an abortion?

A    Okay. Both of my parents are active members at our church.... And they strongly believe that it's not a wise thing to do. It is something they do not believe in. They much rather me have a child. And they wouldn't even give me the opportunity to have this done. They have it set in their mind what would go on. It is something they strongly disapprove of.

* * *

Q    You say that your parents, you seem pretty sure that they would not be in favor of abortion. Have you ... had some general discussion with them about how they would feel if someone in their family got an abortion, or what is your basis for that?

A    Well, when my [relative] had her abortion ... my mom felt very strongly since then that it is something that she doesn't believe in, something that she doesn't want anyone else in the family to have done. She feels that the child would be a part of her and she would not give me that option. She's told me before that is not a thing that she does believe in. She doesn't want her daughter to go through that. It would be wrong. So, she just strongly disagrees with it.

* * *

Q    And can you tell me if there is any reason that you wouldn't want to have your mother there when you wake up [from the sedative after the abortion procedure]?

A    She wouldn't let me do it. I know for a fact she wouldn't. She is very against this and she would be disappointed in me. She wouldn't be there to support me with it. I know she wouldn't go along with it. She wouldn't be there in the first place. She totally detests the fact of people that actually do that.

Having heard this evidence, and after argument by the guardian and by Doe's attorney, the trial court made the following findings:

5.    The applicant has not shown by a preponderance of the evidence that: Applicant is mature and sufficiently well informed to make the decision to have an abortion without notification to either of her parents, her managing conservator, or guardian.

6.    The court finds that although applicant shows sign of being mature, she has not demonstrated that she is sufficiently well informed about the medical procedures and the emotional impact of the procedure.

7.    The applicant has not shown by a preponderance of the evidence that: Notifying either of the applicant's parents, managing conservator or guardian would not be in her best interest.

II

Texas' Parental Notification Act was enacted in the context of a developing body

of federal constitutional law that attempts to determine the extent of a woman's right to choose abortion and the kinds of limitations that can be placed on it. Understanding this context is necessary to construe and apply the Texas statute.

A woman's right to choose abortion that the United States Supreme Court has recognized is not absolute.[4] The Supreme Court explained in *Planned Parenthood v. Casey*:

> At the heart of liberty is the right to define one's own concept of existence, of meaning, of the universe, and of the mystery of human life....

> These considerations begin our analysis of the woman's interest in terminating her pregnancy but cannot end it, for this reason: though the abortion decision may originate within the zone of conscience and belief, it is more than a philosophic exercise. Abortion is a unique act. It is an act fraught with consequences for others: for the woman who must live with the implications of her decision; for the persons who perform and assist in the procedure; for the spouse, family, and society which must confront the knowledge that these procedures exist, procedures some deem nothing short of an act of violence against innocent human life; and, depending on one's beliefs, for the life or potential life that is aborted.[5]

When the woman is a minor, her right is subject to two important limitations: the State's interest in protecting the welfare of all its citizens and the life of the unborn,[6] and the interest of parents and families in living their lives free from undue state interference.[7] I examine each of these limitations in turn.

**4.** *Planned Parenthood v. Casey*, 505 U.S. 833, 869, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (plurality opinion).

**5.** *Id.* at 851–852, 112 S.Ct. 2791.

## A

The State has a legitimate interest in protecting its citizens' welfare, and it may constitutionally favor normal childbirth and encourage a woman to make that choice. In *Casey*, the Supreme Court explained:

> Though the woman has a right to choose to terminate or continue her pregnancy before viability, it does not at all follow that the State is prohibited from taking steps to ensure that this choice is thoughtful and informed. Even in the earliest stages of pregnancy, the State may enact rules and regulations designed to encourage her to know that there are philosophic and social arguments of great weight that can be brought to bear in favor of continuing the pregnancy to full term and that there are procedures and institutions to allow adoption of unwanted children as well as a certain degree of state assistance if the mother chooses to raise the child herself. " '[T]he Constitution does not forbid a State or city, pursuant to democratic processes, from expressing a preference for normal childbirth.' " It follows that States are free to enact laws to provide a reasonable framework for a woman to make a decision that has such profound and lasting meaning.

> \* \* \*

> What is at stake is the woman's right to make the ultimate decision, not a right to be insulated from all others in doing so. Regulations which do no more than create a structural mechanism by which the State, or the parent or guardian of a minor, may express profound respect for the life of the unborn are permitted, if they are not a substantial obstacle to the woman's exercise of the right to choose.

**6.** *Id.* at 872–873, 112 S.Ct. 2791.

**7.** *Hodgson v. Minnesota*, 497 U.S. 417, 444, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (plurality opinion).

\* \* \*

It cannot be questioned that psychological well-being is a facet of health. Nor can it be doubted that most women considering an abortion would deem the impact on the fetus relevant, if not dispositive, to the decision. In attempting to ensure that a woman apprehend the full consequences of her decision, the State furthers the legitimate purpose of reducing the risk that a woman may elect an abortion, only to discover later, with devastating psychological consequences, that her decision was not fully informed. If the information the State requires to be made available to the woman is truthful and not misleading, the requirement may be permissible.

\* \* \*

[W]e permit a State to further its legitimate goal of protecting the life of the unborn by enacting legislation aimed at ensuring a decision that is mature and informed, even when in so doing the State expresses a preference for childbirth over abortion. In short, requiring that the woman be informed of the availability of information relating to fetal development and the assistance available should she decide to carry the pregnancy to full term is a reasonable measure to ensure an informed choice, one which might cause the woman to choose childbirth over abortion.[8]

To sum up, the Supreme Court stated: "[t]he woman's liberty [to choose abortion] is not so unlimited ... that from the outset the State cannot show its concern for the life of the unborn...."[9] "Only where state regulation imposes an undue burden on a woman's ability to make this decision does the power of the State reach into the heart of the liberty protected by the Due Process Clause."[10]

The State's interest is particularly acute when the woman is a minor. The Supreme Court

has held that the States validly may limit the freedom of children to choose for themselves in the making of important, affirmative choices with potentially serious consequences. These rulings have been grounded in the recognition that, during the formative years of childhood and adolescence, minors often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them.[11]

Among those choices, the Supreme Court has insisted, is abortion:

The State has a strong and legitimate interest in the welfare of its young citizens, whose immaturity, inexperience, and lack of judgment may sometimes impair their ability to exercise their rights wisely. That interest, which justifies state-imposed requirements that a minor obtain his or her parent's consent before undergoing an operation, marrying, or entering military service, extends also to the minor's decision to terminate her pregnancy.[12]

**B**

A minor's right to choose to have an abortion can be restricted not only by the State's interest in her welfare but by the interest of her parents and the interest of the family unit.[13] These interests are subject to constitutional protection. The Supreme Court has stated:

[T]he demonstration of commitment to the child through the assumption of personal, financial, or custodial responsibili-

8. *Casey,* 505 U.S. at 872–883, 112 S.Ct. 2791 (citations omitted).

9. *Id.* at 869, 112 S.Ct. 2791.

10. *Id.* at 874, 112 S.Ct. 2791.

11. *Bellotti v. Baird,* 443 U.S. 622, 635, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II*).

12. *Hodgson,* 497 U.S. at 444–445, 110 S.Ct. 2926 (plurality opinion) (citations omitted).

13. *Id.* at 444, 110 S.Ct. 2926.

ty may give the natural parent a stake in the relationship with the child rising to the level of a liberty interest.

\* \* \*

[T]he family has a privacy interest in the upbringing and education of children and the intimacies of the marital relationship which is protected by the Constitution against undue state interference.[14]

This Court has also recognized the constitutional rights of parents in the relationship with their children.[15]

Specifically with respect to parental involvement in a minor's decision whether to have an abortion, the Supreme Court has explained:

[T]he guiding role of parents in the upbringing of their children justifies limitations on the freedoms of minors.... "The child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." "The duty to prepare the child for 'additional obligations' ... must be read to include the inculcation of moral standards, religious beliefs, and elements of good citizenship." This affirmative process of teaching, guiding, and inspiring by precept and example is essential to the growth of young people into mature, socially responsible citizens.

We have believed in this country that this process, in large part, is beyond the competence of impersonal political institutions. Indeed, affirmative sponsorship of particular ethical, religious, or political beliefs is something we expect the State *not* to attempt in a society constitutionally committed to the ideal of individual liberty and freedom of choice. Thus, "[i]t is cardinal with us that the custody, care and nurture of the child

reside first in the parents, whose primary function and freedom include *preparation for obligations the state can neither supply nor hinder.*"

\* \* \*

[T]he parental role implies a substantial measure of authority over one's children. Indeed, "constitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society."

Properly understood, then, the tradition of parental authority is not inconsistent with our tradition of individual liberty; rather, the former is one of the basic presuppositions of the latter. Legal restrictions on minors, especially those supportive of the parental role, may be important to the child's chances for the full growth and maturity that make eventual participation in a free society meaningful and rewarding. Under the Constitution, the State can "properly conclude that parents and others, teachers for example, who have [the] primary responsibility for children's well-being are entitled to the support of laws designed to aid discharge of that responsibility."

\* \* \*

[P]arental notice and consent are qualifications that typically may be imposed by the State on a minor's right to make important decisions. As immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, a State reasonably may determine that parental consultation often is desirable and in the best interest of the minor. It may further determine, as a general proposition, that such consulta-

---

**14.** *Id.* at 446, 110 S.Ct. 2926.

**15.** *E.g., Patterson v. Planned Parenthood,* 971 S.W.2d 439, 447 (Tex.1998) (Gonzalez, J.,

concurring); *In the Interest of J.W.T.,* 872 S.W.2d 189, 194–195 (Tex.1994); *Wiley v. Spratlan,* 543 S.W.2d 349, 352 (Tex.1976).

tion is particularly desirable with respect to the abortion decision—one that for some people raises profound moral and religious concerns.[16]

The Supreme Court has held that a parent cannot have an absolute and arbitrary veto over a child's choice of an abortion.[17] But by the same token, a parent's right to be involved in a child's decisions cannot be abrogated without sufficient reason.

## III

In the context of this developing federal constitutional law, Texas' Parental Notification Act was passed, as its abundant history repeatedly emphasizes, to encourage parental participation in a minor's decision to have an abortion, to discourage abortion generally, and to discourage teen pregnancy with the warning that an abortion without parental involvement would not be readily available. The Act prohibits a physician, with certain exceptions, from performing an abortion on an unemancipated minor without giving a parent, managing conservator, or guardian at least 48 hours' actual notice.[18] One exception to this prohibition is that a court may grant a minor's application to consent to an abortion without the prescribed notice if the court determines, by a preponderance of the evidence, that either (1) "the minor is mature and sufficiently well informed to make the decision to have an abortion performed without notification to either of her parents or a managing conservator or guardian," (2) "notification would not be in the best interest of the minor," or (3) "notification may lead to physical, sexual, or emotional abuse of the minor."[19] As I have already noted, petitioner bases her application on the first two of these grounds. I consider each ground separately.

## A

The Legislature has not defined the phrase "mature and sufficiently well informed" in section 33.033(i). Accordingly, we are obliged to give the words their ordinary meaning,[20] a requirement acknowledged by the Court and then wholly ignored.

According to the *Oxford English Dictionary*, the word "mature", used in describing a person, means "having the powers of body and mind fully developed." With reference to thought and deliberation, the word means "duly prolonged and careful." And as applied to "plans, conclusions, etc.," the word means "formed after adequate deliberation." The *Oxford English Dictionary* defines the word "well-informed" as: "Well equipped with information; fully furnished with knowledge, whether of a special subject or of things in general; having a well-stored mind." Thus defined, the statutory phrase, "mature and sufficiently well informed", refers to the basis for a decision—full information and knowledge of the subject—as well as the manner in which it is made—as by a person of ample years and experience.

A decision cannot be well informed if the person making it does not have a full knowledge of the relevant considerations. In the present context, this does not mean that a minor must know all there is to know about abortion as a medical procedure or the alternatives to it and the factors involved in a choice. Some of the relevant factors are not hard to assess, such as the health risks of the procedure to the woman. But many of the relevant factors involve more unknowns: the consequences to the fetus, the risks of psychological and emotional problems, the woman's ability to mother the child if it is born,

---

**16.** *Bellotti II*, 443 U.S. at 637–640, 99 S.Ct. 3035 (emphasis in original, citations omitted).

**17.** *Planned Parenthood v. Danforth*, 428 U.S. 52, 74, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976).

**18.** Tex. Fam.Code § 33.002.

**19.** *Id.* § 33.003(i).

**20.** Tex. Gov't Code § 312.002(a); *Owens Corning v. Carter*, 997 S.W.2d 560, 577 (Tex.1999).

the availability of alternatives including adoption, the availability of financial assistance if the child is carried to term, the impact of the decision on the woman's present and future family, and the "philosophic and social" [21]—including religious—concerns that favor continuing the pregnancy to term. Mastery of these issues is not necessary for a person to be well-informed, but an appreciation of them is. A minor worried about the financial burdens of parenthood, for example, should know what support is available to her; that information could affect her decision. While people disagree about the more subjective factors, a minor should nevertheless have some awareness of the issues in the disagreement in making her decision. As the United States Supreme Court has observed, the State has a legitimate purpose in "reducing the risk that a woman may elect an abortion, only to discover later, with devastating psychological consequences, that her decision was not fully informed." [22]

The abortion decision does not turn merely, or mostly, on simple facts, such as that in most instances abortion is a very safe medical procedure. The risks in a particular case may be greater and may determine the decision, but that is not true in most situations. Far more important are concerns about the family, social, psychological, emotional, moral, and religious implications of the abortion decision. Ordinarily, some of these issues are none of the State's business. A person's religious views, for example, are entirely a private and individual matter. But minors who have not yet thought seriously about such matters should be aware that their views may someday change. It is critical that a minor appreciate that decisions made today can have consequences decades into the future. The essential approach taken by the Legislature in the Parental Notification Act is that if a minor is to be allowed to choose abortion without the guidance parents should give a child in such circumstances, then she must have an appreciation of that guidance from somewhere else. Because there is deep disagreement over the subjective elements of a choice of abortion, a minor should be aware of and appreciate the differing views. She is free to credit some and discount others, of course, but she ought not to make a decision without knowing what others believe to be at stake. As the United States Supreme Court has observed, "It seems unlikely that [a woman] will obtain adequate counsel and support from the attending physician at an abortion clinic, where abortions for pregnant minors frequently take place." [23] The landscape is not revealed in any single setting.

Whether a minor is well informed is more of an objective determination than whether she is mature. As noted above, the latter quality is an ability to act as an experienced adult would. The United States Supreme Court has observed that "the fact that a minor may be very much an adult in some respects does not mean that his or her need and opportunity for growth under parental guidance and discipline have ended." [24] The Court fails to take this obvious fact into account. Maturity is not so much a matter of what a person knows as it is of how she thinks and acts. A trial judge who can watch a minor's demeanor and hear the inflections in her voice is in a far better position to determine her maturity than an appellate judge confined to the typed transcript of her testimony.

From the meanings of the words themselves and the purposes of the Parental

21. *Planned Parenthood v. Casey*, 505 U.S. 833, 872, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (plurality opinion).

22. *Id.* at 882, 112 S.Ct. 2791.

23. *H.L. v. Matheson*, 450 U.S. 398, 410, 101 S.Ct. 1164, 67 L.Ed.2d 388 (1981).

24. *Bellotti v. Baird*, 443 U.S. 622, 644 n. 23, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II*) (plurality opinion).

Notification Act, informed by the United States Supreme Court's reference to the same ideas in numerous opinions, I conclude that by "mature and sufficiently well informed" the Legislature means a minor who has obtained for herself the kind of complete and balanced information relevant to her decision and evaluate it as a person who no longer needed parental guidance on so grave a matter. For reasons that I am about to explain, the Court reads the statutory standard to mean something far less.

**B**

Although petitioner in this case has not focused her arguments on appeal on the alternative ground on which she based her application—that notifying her parents of her intent to have an abortion would not be in her best interest—I address that ground briefly.

In essence, petitioner does not want to notify her parents because she fears they will not approve. This concern, standing alone, should not justify excluding her parents from her decision, as the trial court found. For one thing, petitioner may have judged wrongly. But assuming her fears are well founded, petitioner must choose between parental disapproval and the burden of knowing that she has kept something very important from them. The latter does not simply trump the former. A minor's concealment from her parents of so profound a decision, like the decision itself, may have lifelong, and unforeseen, consequences. The trial judge must ensure that the minor appreciates those consequences and must attempt to determine whether it would not be in a minor's interest to attempt to involve her parents in her decision despite their disappointment and disapproval.

**IV**

The Court's opinion minimizes what a minor must prove to show that she is "mature and sufficiently well informed" to choose abortion without involving her parents. This is not immediately apparent from all its language. For instance, at one point the Court states that a minor must demonstrate that her decision "is based upon careful consideration of the various options available to her and the benefits, risks, and consequences of those options." [25] But this broad statement is belied by the specific requirements set out in Part V. There are only three, and while they are what the Court would require "at a minimum",[26] they are nevertheless sufficient as a matter of law for a minor to obtain judicial authorization for an abortion.

This point is crucial: as the Court reads the statute, once a minor has proved what she must by a preponderance of the evidence, then she is *entitled as a matter of law* to an abortion without parental notification. The trial court has no discretion in the matter. Thus, if a minor offers evidence to satisfy the Court's three requirements, her application *must be granted.* This standard is, of course, foreign to the language, intent, and purposes of the Act.

The Court's first requirement is that a minor must obtain information about the health risks of the procedure. While such information is certainly essential to the minor's decision, it will not be significant in most instances. Abortion is, for the most part, a physically safe procedure. There are instances when this is not true, and a minor should be advised of the risks *to her,* but in most instances it will not be difficult for a minor to meet this requirement.

The Court's second requirement is that a minor should "have an understanding of the alternatives to abortion and their implications" and have given them "thoughtful consideration", although she need not "justify why she prefers abortion above

---

**25.** *Ante* at 255.

**26.** *Ante* at 256.

other options".[27] In the Court's view, this requirement can be satisfied by a simple declaration by the minor that she has thought long and hard about her decision. But in fact, a minor is not well informed merely because she knows that she can carry her pregnancy to term and then either keep the child or offer it for adoption. She should have an appreciation of what her options entail.

The Court's third requirement is that a minor should have received information "from reliable and informed sources" concerning the "emotional and psychological aspects of undergoing an abortion".[28] Just who such sources might be the Court does not say, but nothing prohibits them from all being promoters of abortion. A minor is not well informed simply because she has heard one side of a matter.

The Court acts as if these three requirements are significant, but they plainly are not. Any competent attorney representing a minor in a case like this can easily script testimony that will meet all three requirements. All a minor need tell the trial court is: that she has consulted with a clinician who told her that abortion presented insignificant physical risks to her, that some people regret having an abortion but not very often, and that she could always have the child and keep it or put it up for adoption; and that she carefully considered all the clinician said. Once the minor has covered these bases, she is *entitled* to an order authorizing her to consent to an abortion. A trial court that is convinced that a minor is not entitled to an abortion without parental notification must therefore base the decision on the minor's overall credibility and evidence of her immaturity that cannot be fully reflected in the appellate record.

The Court refuses even to acknowledge that a minor's decision can profoundly affect her future and present family relationships. In the Court's mind, the most significant issues involved in the abortion decision do not even exist. According to the Court, a minor is well informed if she knows a little about a few things which may matter and nothing about the very profound consequences of her decision.

The Court completely ignores the fundamental, constitutional rights of petitioner's parents which must, as the United States Supreme Court has stated,[29] be balanced against petitioner's right to choose an abortion. The Legislature's express intent in passing the Parental Notification Act was to protect parents' rights to provide children guidance in making difficult decisions. In essence, the Court holds that minors can get by without the help.

## V

I have set out above in complete detail petitioner's testimony, omitting only those facts that tend to identify her. It is fair to say that she based her decision to have an abortion on what she called "partial counseling" one Saturday at a Planned Parenthood clinic; the unsurprising encouragement of her 19-year-old boy friend, who is the father of the child and now wants no part of the responsibility; a brief conversation with a relative who had an abortion when she was petitioner's age; conversations with three teenage friends, one of whom was glad she had had an abortion, and two of whom, one age 15, said they wished they had; and unspecified information obtained on the internet. I agree with the Court that this does not prove as a matter of law that petitioner is mature and sufficiently well informed to have an abortion without telling her parents.

Incredibly, the Court never hints at the specific deficiency in petitioner's proof. In this "matter of first impression" the Court hides any reasoning it has. Why has petitioner's proof failed? What was missing?

---

27. *Ante* at 256.

28. *Ante* at 256.

29. *Hodgson v. Minnesota,* 497 U.S. 417, 444, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990) (plurality opinion).

How much more, or how little, was required? Ordinarily, the Court would answer these questions, would apply its construction of the statute to the facts of the case and explain the consequences. But the JUSTICES in the majority cannot agree on enough issues, even after days of compromise among themselves, to come up with a single ecumenical justification for their result. The Court says that it writes to give the lower courts guidance, and then in Part VII of its opinion, on the issue dispositive of the case, offers no explanation. None, except "Sorry, you lose, try again." To undertake an opinion in this case and then give no explanation for the result is a blatant abnegation of the Court's responsibility to the lower courts and the petitioner, and an affront to the Legislature.

I would hold that the trial court's decision to deny petitioner's application was based on some evidence, and I would deny her appeal. I do not agree that she should simply have a second try, especially since she will have no trouble improving her case. While the court's decision should be given res judicata effect, it would not bar petitioner from reapplying if her circumstances changed materially.

## VI

I agree with the conclusion in Part II of the Court's opinion that this Court must publicly explain its decisions, even in cases like this one in which there is a special need for confidentiality.[30] Neither our duty to the rule of law, nor our constitutional role in the government, nor our obligations to the people whose government it is, permit this Court to rule in secret. It may well be that the lower courts' rulings in cases like this cannot be secret either, but petitioner has not raised the issue, and no one else can raise it in this case, since no one besides her attorney

and guardian will have known before today that the case was before us. So the issue must be left for another day.[31]

I also agree with the conclusion in Part III of the Court's opinion that the trial court's decision in this case should be affirmed on appeal if it finds sufficient support in the evidence.[32] Because our jurisdiction to review evidentiary sufficiency is limited, we must affirm the trial court's decision if there is any evidence to support it. We can reverse only if petitioner demonstrates that she has proven her right to an abortion without parental involvement as a matter of law, which I agree she has not done, for the reasons I have explained and the Court has not.

\* \* \* \* \*

The people of Texas, like the American people, are deeply divided over abortion. That division will almost certainly affect the present and future life of every minor who has an abortion. If the Legislature's mandate that a minor be well informed before choosing abortion without involving her parents does not mean that she be given the same guidance a child should have from her parents, then it offers her little protection. If the Legislature's mandate means that parents can be deprived of their fundamental right to guide their child's decisions when she has no more appreciation of her circumstances than the Court requires, then the statute is almost meaningless. I would not deny the Parental Notification Act its intended purposes. I dissent.

**30.** *Ante* at 251–52.

**31.** *See also* TEX. PARENTAL NOTIFICATION RULES & FORMS, Explanatory Stmt. ("such issues

should not be resolved outside an adversarial proceeding with full briefing and argument").

**32.** *Ante* at 253.