

# NUMBER 13-21-00114-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF A.M.M., M.A.M., K.A.M., J.G.M., J.E.M., AND J.I.M.P., CHILDREN

### On appeal from the 138th District Court of Cameron County, Texas.

## DISSENTING MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Silva**
**Dissenting Memorandum Opinion by Justice Silva**

By establishing what essentially amounts to an absolute right to an interpreter, the majority discourages parents from taking timely steps to protect their own due process interests and encourages them to delay until the last minute to raise an issue with the trial court, effectively impairing the ability of trial courts and the Department to alleviate the deficiency. Consequently, parents in State-initiated termination suits now have a mechanism by which they can win by default: wait until the dismissal date to raise a due

process concern and get their children back when jurisdiction expires because trial could not commence on or before the dismissal date. Such mechanism may be intended to protect the due process rights of the parents, but it ultimately tramples on the due process rights of the children and the State's fundamental interest in protecting the children. Therefore, I respectfully dissent.

## I.    BACKGROUND

I believe the majority's recitation of the relevant background is accurate; however, I would like to add some additional information. All the documents filed in this case, including the original and amended petitions, supporting affidavits, and plans of service, were in English. This includes the family plan of service signed by F.M., filed with the court, and adopted as an order of the court.[1] The record indicates that the family plan of service for adjudicated father R.C. was translated into Spanish for his benefit. Further, there is no evidence from the record that F.M. requested a translator for any of the other hearings throughout the suit, but a docket notation reflects that on June 16, 2020, an interpreter was present for R.C.

## II.    DUE PROCESS

By her first two issues, F.M. argues her due process rights were violated when (1) the trial court failed to have an interpreter available to her for the entirety of trial; and (2) trial proceeded through Zoom rather than in-person, thus depriving her of access to her counsel throughout the proceedings.

---

[1] There were two copies of the family plan of service filed: the first on September 19, 2019, which was unsigned by F.M., and the second on August 25, 2020, which was signed by F.M.

2

**A.    Standard of Review**

"We review questions raising constitutional concerns de novo." *In re Commitment of C.H.*, 606 S.W.3d 570, 573 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *State v. Hodges*, 92 S.W.3d 489, 494 (Tex. 2002)). "When the trial court may grant or deny relief based on its factual determinations, we apply an abuse of discretion standard of review." *Id.* (citing *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000)). "In this connection, we typically apply an abuse of discretion standard of review to procedural rulings or 'other trial management determinations.'" *Id.* (quoting *In re Doe*, 19 S.W.3d at 253).

When the State seeks to terminate the parent-child relationship, "it must provide the parents with fundamentally fair procedures." *In re J.F.C.*, 96 S.W.3d 256, 273 (Tex. 2002) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982)). "In the termination context, due process turns on a balancing of three distinct factors." *Id.* (quoting *Santosky*, 455 U.S. at 754) (cleaned up).[2] "Those factors are: 'the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure.'" *Id.* (quoting *Santosky*, 455 U.S. at 754). "While parental rights are of constitutional magnitude, they are not absolute." *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *Id.*

---

[2] We note that the three-factor balancing test employed in *In re J.F.C.* is the same balancing test employed in *Mathews v. Eldridge*. *Compare In re J.F.C.*, 96 S.W.3d 256, 273 (Tex. 2002) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753–54 (1982)); *with Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Accordingly, I agree with the majority's use of this test, but disagree with the outcome of its application.

**B.     Applicable Law**

F.M. asserts that the trial court's failure to appoint her an interpreter violates her rights under the Fifth, Sixth, and Fourteenth Amendment to the U.S. Constitution and Article I, Section 10 of the Texas Constitution. *See* U.S. CONST. amends. V, VI, XIV; TEX. CONST. art. I, § 10. However, "[t]he protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'" *Austin v. U.S.*, 509 U.S. 602, 608 (1993). Similarly, Article I, Section 10 of the Texas Constitution only applies to criminal prosecutions. *In re S.A.G.*, 403 S.W.3d 907, 912 (Tex. App.—Texarkana 2013, pet. denied). F.M. primarily relies on criminal law procedure and case law in support of her assertion that the failure to have an interpreter available throughout the entire proceeding violated her constitutional due process rights. However, the code of criminal procedure applies to criminal cases, not civil, *cf.* TEX. CODE CRIM. PROC. ANN. art. 1.03, and parental termination proceedings are civil. *See In re S.A.G.*, 403 S.W.3d at 912. Further, F.M. erroneously relies on criminal case law in support of her assertion that the Confrontation Clause requires an interpreter for parental termination suits. *See In re S.A.G.*, 403 S.W.3d at 912 (holding the Sixth Amendment to the U.S. Constitution and Article I, Section 10 of the Texas Constitution are inapplicable in suits to terminate the parent-child relationship brought by the State). Accordingly, our review is limited to due process applicable to civil cases, including parental termination suits.

Whether due process affords a parent the right to be given an interpreter for the entire trial proceedings in a parental termination case appears to be a matter of first impression for this Court. F.M. relies on *In re L.M.I.* for the proposition that the right to an

4

interpreter in a parental termination suit is a matter of due process. *See In re L.M.I. (L.M.I. I)*, 117 S.W.3d 1, 4 (Tex. App.—Houston [14th Dist.] 2001) (concluding "[father's] right to have the affidavit [of relinquishment] accurately interpreted in a language he understands is a matter of due process"), *aff'd*, 119 S.W.3d 707 (Tex. 2003) (*L.M.I. II*). However, the Texas Supreme Court declined to reach the issue after determining that appellant father failed to preserve the argument. *In re L.M.I. II*, 119 S.W.3d at 711 ("[A]llowing appellate review of unpreserved error would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved . . . ."). Thus, the Texas Supreme Court left the termination intact but declined to resolve the question of whether a parent has the due process right to an interpreter for parental termination proceedings. *Id.*; *but see M.M.V. v. Tex. Dep't Fam. & Prot. Servs.*, 455 S.W.3d 186, 190 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (concluding that "litigants in civil proceedings to terminate parental rights are entitled to an interpreter" but appellant failed to preserve complaint regarding interpreter's competency).

**C.      Analysis**

**1.      Interpreter**

I agree with the majority that for a parent to have "fundamentally fair procedures" in a parental termination case, the parent must typically be able to understand the proceedings. *See In re J.F.C.*, 96 S.W.3d at 273. As such, to protect the parent's due process rights, a parent is generally entitled to an interpreter when he or she cannot understand the proceedings. *See id.* To determine whether F.M.'s due process rights were violated by the specific circumstances presented in the case, we must balance "the

5

private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *See id.* (quoting *Santosky*, 455 U.S. at 754) (cleaned up).

The private interest at stake is F.M.'s fundamental interest in the care, custody, and management of her children, "'an interest far more precious than any property right.'" *In re J.F.C.*, 96 S.W.3d at 273 (quoting *Santosky*, 455 U.S. at 758–59). As such, "the private interest in a parental termination case [is] 'a commanding one.'" *Id.* (quoting *Santosky*, 455 U.S. at 758–59).

I believe the majority's opinion does not properly analyze the risk of erroneous deprivation. *See In re J.F.C.*, 96 S.W.3d at 273. In this case, the risk of error created by proceeding without an interpreter was significant but not determinative. That risk was partially mitigated by the presence of F.M.'s counsel, who was able to understand the proceedings and assist F.M. in responding to the evidence presented by the Department. The risk was also partially mitigated by the attendance of an interpreter for F.M.'s testimony as well as a portion of the trial to translate the proceedings to F.M. It is crucial to note that the nature and content of the Department's evidence in a termination suit would not change based on the presence of an interpreter; rather, it changes F.M.'s ability to respond to it. The Department maintains the burden of proving by clear and convincing evidence both the predicate grounds for termination and that such termination is in the child's best interest in its case in chief. *See* TEX. FAM. CODE ANN. § 161.001(b); *Santosky*, 455 U.S. at 768 (requiring a clear and convincing burden of proof before the State may terminate the parent-child relationship in order to protect the due process rights of the

6

parent). Although the majority emphasizes that "there were ten witnesses called with no interpreter present[,]" such fact seems irrelevant to its ultimate conclusion: "F.M.'s right to due process . . . required the presence of an interpreter throughout the proceeding." The majority appears to hold for the first time that a parent's right to an interpreter in a termination suit is absolute. *But see In re C.H.*, 89 S.W.3d 26 ("While parental rights are of constitutional magnitude, they are not absolute.").

Additionally, nothing in the record demonstrates that the Department, the trial court, or the other parties had reason to believe F.M. would need an interpreter on the day of trial. Rather, the record reflects that, up until that point, the proceedings and filings were in English, and F.M. did not require an interpreter to proceed. Although the trial court did not consider on the record whether an interpreter was actually necessary, nor do I, such information demonstrates surprise to the parties and trial court.

The Department, parents, and children all have an interest in timely resolution of parental termination cases. *In re J.F.C.*, 96 S.W.3d at 274. Here, the original dismissal date was July 27, 2020, extended to August 26, 2020, following the thirty-day extension by the trial court. *See* TEX. FAM. CODE ANN. § 263.401(a); *Seventeenth Emergency Order Regarding COVID-19 State of Disaster*, 609 S.W.3d 119, 120 (Tex. 2020). F.M. did not request an interpreter until the day of trial on August 25, 2020, despite being aware of the trial date for over sixty days. *See* TEX. GOV'T CODE ANN. § 57.002(a) (mandating the appointment of an interpreter for a party who files a motion requesting such).

The majority notes that "absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial

process must be given a meaningful opportunity to be heard." *Boddie v. Connecticut*, 401 U.S. 371, 377 (1971). Although minimized by the majority, a countervailing state interest existed here: the Department's fundamental interest in protecting the children's health and safety was of overriding significance. *See id.*; *In re A.B.*, 437 S.W.3d 498, 505 (Tex. 2014) ("[I]n parental termination cases, the parents' fundamental interest in maintaining custody and control of their children is *balanced* against the State's fundamental interest in protecting the welfare of the child.") (emphasis added); *see also* TEX. FAM. CODE ANN. § 263.401(a), (b) (terminating the trial court's jurisdiction if trial on the merits has not commenced by the dismissal date). Further, the Department's interest was not only "proceeding to trial in a timely manner" as the majority states but proceeding to trial *at all* when faced with jurisdictional deadlines.

If trial had not commenced by August 26, 2020, one day after the actual commencement date, the trial court would have lost jurisdiction, F.M. would have automatically retained her parental rights, and the children would need to be returned to her care and custody. TEX. FAM. CODE ANN. § 263.401(a), (b); *cf. In re L.N.C.*, 573 S.W.3d 309, 323 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (considering that "[t]he case was not at risk for dismissal" before concluding that "the Department's interest in resolving the case in a single day cannot be given more weight than the interests of [the parents] in a just and accurate result"). Such outcome would completely strip the Department, and by extension the State, from an opportunity to protect its fundamental interests. *See Boddie*, 401 U.S. at 377. The children could potentially be subjected to additional abuse and neglect on the basis that the trial court could not have an interpreter available upon

8

F.M.'s request at the time trial was set to begin. As such, the Department's interests in protecting the health and safety of the children and proceeding to trial outweighed F.M.'s right to an interpreter for the entire proceeding. *In re C.H.*, 89 S.W.3d at 26 ("[I]t is . . . essential that emotional and physical interests of the child not be sacrificed merely to preserve [the parent's] right" to the parent-child relationship.)

The majority notes that an interpreter was available to the trial court later in the first day, and thus the trial court could have simply delayed trial until later in the day. Yet, nothing in the record demonstrates that the trial court was or should have been aware that such availability would occur. The majority also states that the "interpreter was made available when the Department wished to call a witness that only spoke Spanish." However, nothing in the record indicates that the interpreter was *made available*. On this record, it is just as likely that the Department waited until the interpreter was available to call the witness or that it made arrangements in advance to have the interpreter available for a witness it knew only spoke Spanish.

F.M. urged the trial court to extend the case for up to 180 days under Texas Family Code § 263.401(b). *See* Tex. Fam. Code Ann. § 263.401(b). However, to extend the jurisdictional deadline, the trial court must "find[] that extraordinary circumstances necessitate the child[ren] remaining in the temporary managing conservatorship of the [D]epartment and that continuing the appointment of the [D]epartment as temporary managing conservator is in the best interest of the child[ren]." *Id.* When determining whether extraordinary circumstances exist, the focus is on the needs of the children. *In re A.J.M.*, 375 S.W.3d 599, 604 (Tex. App.—Fort Worth 2012, pet. denied). Further,

"[a]ctions that are considered to be the parent's fault will generally not constitute extraordinary circumstances." *In re J.S.S.*, 594 S.W.3d 493, 501 (Tex. App.—Waco 2019, pet. denied) (citing *In re O.R.F.*, 417 S.W.3d 24, 42 (Tex. App.—Texarkana 2013, pet. denied)). F.M. did not establish that her failure to make a timely request for an interpreter constitutes an extraordinary circumstance or that remaining in the temporary managing conservatorship of the Department was in the children's best interest. *See* TEX. FAM. CODE ANN. § 263.401(b); *see also id.* § 263.307(a) ("[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest."). Although it is not F.M.'s fault that she is not fluent in the English language, she bears responsibility for failing to timely request an interpreter. *See In re J.S.S.*, 594 S.W.3d at 501.

Because I believe the majority does not give the proper weight to the State's fundamental interests and the consequences of the pending jurisdictional deadline, I would conclude that the trial court did not abuse its discretion or violate F.M.'s due process rights by denying F.M.'s request for an extension and proceeding to trial without an interpreter for portions of the trial.[3] *See In re Commitment of C.H.*, 606 S.W.3d at 573 (citing *In re Doe*, 19 S.W.3d at 253) (applying abuse of discretion standard to factual

---

[3] The majority suggests that once the trial court commenced trial prior to the dismissal date, the case was not in jeopardy of dismissal under Texas Family Code § 263.401(a). *See* TEX. FAM. CODE ANN. § 263.401(a). However, it also concludes that "[the trial court] was not free to provide an interpreter sporadically throughout the trial[,]" but instead "required the presence of an interpreter throughout the proceeding." These two conclusions appear to be in conflict: the trial court cannot simultaneously commence trial without an interpreter to stop the jurisdictional deadline and provide an interpreter for the entire proceeding. The majority correctly identifies that the trial court controlled its own scheduling but concludes that the trial court could have delayed the trial to some unknown day and time without the benefit of knowing the availability of the trial court, witnesses, and parties. Further, I would caution against the encouragement of commencing trial for the sole purpose of skirting jurisdictional deadlines. *See* TEX. FAM. CODE ANN. § 263.402 ("The parties to a suit under [Chapter 263] may not extend the deadlines set by the court under this subchapter by agreement *or otherwise*.") (emphasis added).

determinations, procedural rulings, and other trial management decisions); *In re J.F.C.*, 96 S.W.3d at 273. I would conclude that requiring a parent to make a timely request for an interpreter provides "fundamentally fair procedures" to the parent, the State, and the children. *See In re J.F.C.*, 96 S.W.3d at 273. For the foregoing reasons, F.M.'s first issue should be overruled. I proceed to consider the merits of F.M.'s other issues. I proceed to consider the merits of F.M.'s other issues.

## 2.     Access to Counsel

By her second issue, F.M. argues her due process rights were violated by the "failure to provide access and effective communication between trial counsel and [F.M.] during the trial."[4] Beyond this assertion, F.M. provides no reference to a statute, rule, or case law supporting her position. A "brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Failure to do so may result in waiver of the argument. *See RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018); *see also H&H Sand & Gravel, Inc. v. Suntide Sandpit, Inc.*, No. 13-17-00510-CV, 2019 WL 2293585, *7 (Tex. App.—Corpus Christi–Edinburg, May 30, 2019, pet. denied) (mem. op.). We may, however, address F.M.'s point in the interest of justice. *In re O.R.F.*, 417 S.W.3d at 42. I do so here.

A review of the record reveals no action by the trial court or circumstance of trial that prohibited F.M. from having access to her attorney during trial. At trial, F.M.'s counsel asserted that conducting the trial via Zoom prohibited F.M. from being "side by side" with

---

[4] F.M. does not argue that she received ineffective assistance of counsel. *See In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003) ("[T]he statutory right to counsel in parental-rights termination cases embodies the right to effective counsel.").

her. However, during F.M.'s de novo hearing, the trial court asked F.M.'s counsel, "[L]et's assume that I do grant a new hearing. Are you able to have [F.M.] side by side with you, even though she has masks, in the next hearing?" F.M.'s counsel responded, "We would have to do that. Yes, Your Honor. I would have to go ahead and do it in my office somehow, Your Honor." F.M. does not argue that such a situation was not possible for the original trial, nor does the record demonstrate any evidence in support of such. I would conclude that F.M.'s due process rights were not violated due to lack of access to and effective communication between F.M. and her trial counsel. *See In re A.T.M.*, No. 13-21-00008-CV, 2021 WL 2584402, at *8 (Tex. App.—Corpus Christi–Edinburg June 24, 2021, no pet.) (mem. op.) (concluding father's telephonic appearance, rather than personal appearance, did not "meaningfully deprive[] him of any constitutional right."). F.M.'s second issue should be overruled.

### III.  SUFFICIENCY OF THE EVIDENCE

### A.  Standard of Review

By her third, fourth, fifth, and seventh issues, F.M. argues the evidence was legally and factually insufficient to support termination. By her sixth issue, F.M. argues termination was improperly based on evidence that she was economically disadvantaged. *See* TEX. FAM. CODE ANN. § 161.001(c)(2) (prohibiting termination based on evidence that a parent is economically disadvantaged).

"[I]nvoluntary termination of parental rights involves fundamental constitutional rights" and divests the parent and children of all legal rights, privileges, duties and powers normally existing between them, except for the children's right to inherit from the parent.

12

*Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re L.J.N.*, 329 S.W.3d 667, 671 (Tex. App.—Corpus Christi—Edinburg 2010, no pet.); *see In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (Lehrmann, J., concurring) ("Termination of parental rights, the total and irrevocable dissolution of the parent-child relationship, constitutes the 'death penalty' of civil cases."). Accordingly, "termination proceedings must be strictly scrutinized." *In re K.M.L.*, 443 S.W.3d at 112. In such cases, due process requires application of the "clear and convincing" standard of proof. *Id.* (citing *Santosky*, 455 U.S. at 769; *In re J.F.C.*, 96 S.W.3d at 263). This intermediate standard falls between the preponderance of the evidence standard of ordinary civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980); *In re L.J.N.*, 329 S.W.3d at 671. It is defined as the "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007. A parent's rights to their children may be terminated upon a showing by clear and convincing evidence that (1) he or she engaged in certain acts or omissions prescribed by statute and (2) termination is in the children's best interest. TEX. FAM. CODE ANN. § 161.001(b).

When reviewing the factual sufficiency of the evidence supporting termination, we ask "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the [Department]'s allegations." *In re C.H.*, 89 S.W.3d at 25. In conducting this review, we consider whether the disputed evidence is such that a reasonable finder of fact could not have resolved the disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. "If, in light of the entire record, the disputed

13

evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Under the factual sufficiency standard, we defer to the trier of fact's determinations on the credibility of the witnesses "so long as those determinations are not themselves unreasonable." *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam); *see In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam); *see also In re C.H.*, 89 S.W.3d at 26 ("A standard that focuses on whether a reasonable jury could form a firm conviction or belief retains the deference an appellate court must have for the factfinder's role.").

When reviewing the legal sufficiency of the evidence, we "should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. We must assume "the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* Finally, we "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible" while considering "undisputed facts that do not support the finding." *Id.* If we "determine[] that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then [we] must conclude that the evidence is legally insufficient." *Id.*

## B. Applicable Law

### 1. § 161.001(b)(1)(D) and (E)

Among the prescribed grounds for termination is that the parent "knowingly placed

14

or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" or "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *Id.* § 161.001(b)(1)(D), (E). The primary difference between Subsection (D) and Subsection (E) is that Subsection (D) focuses on the child's conditions or surroundings while Subsection (E) focuses on the parent's or another's conduct, whether by overt act or omission. *In re A.L.H.,* 624 S.W.3d 47, 55–56 (Tex. App.—El Paso 2021, no pet.). However, the same evidence may support a finding under either subsection, depending on the circumstances. *Id.* (providing the example of continued domestic violence in the home with the children as grounds under both Subsection (D) and (E)). "[E]ndangerment encompasses 'more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment.'" *In re D.L.W.W.,* 617 S.W.3d 64, 78 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quoting *Tex. Dep't of Hum. Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987)). "'[E]ndanger' means to expose to loss or injury; to jeopardize." *In re J.F.-G.,* 627 S.W.3d 304, 312 (Tex. 2021) (quoting *Boyd,* 727 S.W.2d at 533).

Under Subsection (D), "we must examine the time before the children's removal to determine whether the environment itself posed a danger to the [children's] physical or emotion well-being." *In re L.W.,* 609 S.W.3d 189, 199–200 (Tex. App.—Texarkana 2020, no pet.) (quoting *In re L.C.,* 145 S.W.3d 790, 795 (Tex. App.—Texarkana 2004, no pet.)). The children's physical or emotional well-being is endangered when the parent fails to remove them from a home in which abusive or violent conduct is occurring. *Id.* Unsanitary

15

living conditions may also endanger the children's physical or emotion well-being by posing a health risk to the children. *In re S.B.*, 597 S.W.3d 571, 584 (Tex. App.—Amarillo 2020, pet. denied).

Subsection (E) focuses on the parent's conduct rather than the child's conditions; it requires more than a single act or omission, but rather a "voluntary, deliberate, and conscious course of conduct by the parent." *In re A.L.H.*, 624 S.W.3d at 56 (citing *In re K.A.C.*, 594 S.W.3d 364, 372 (Tex. App.—El Paso 2019, no pet.)). "Sexual abuse is conduct that endangers a child's physical or emotional well-being." *In re E.A.G.*, 373 S.W.3d 129, 143 (Tex. App.—San Antonio 2012, pet. denied). "Sexual assault of a child in the home is conduct we may infer will endanger the physical and emotional well-being of other children in the home who may either discover the abuse or be abused themselves." *Id.* "[N]eglect can be just as dangerous to the well-being of a child as direct physical abuse." *In re M.C.*, 917 S.W.2d 268, 270 (Tex. 1996) (per curiam). "The failure to provide appropriate medical care for a child may constitute endangering conduct under Subsection (E)." *In re J.D.G.*, 570 S.W.3d 839, 852 (Tex. App.—Houston [1st Dist.] 2018, pet. denied). Incarceration alone is not sufficient to support termination under Subsection (E), but "evidence of criminal conduct, convictions, and imprisonment may support a finding of endangerment." *In re E.R.W.*, 528 S.W.3d 251, 264 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

### 2. Best Interest

In addition to proving the requisite grounds for termination, the Department must prove by clear and convincing evidence that such termination is in the best interest of the

child. TEX. FAM. CODE ANN. § 161.001(b)(2). When determining whether a child's best interest is served by termination, we may consider the *Holley* factors:

> (1) the child's emotional and physical needs; (2) the emotional and physical danger to the child now and in the future; (3) the parental abilities of the individuals seeking custody; (4) the plans for the child by those individuals and the stability of the home; (5) the plans for the child by the agency seeking custody and the stability of the proposed placement; (6) the parent's acts or omissions that may indicate the existing parent–child relationship is improper; and (7) any excuse for the parent's acts or omissions.

*In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018) (citing *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976)). Not all the prescribed factors must weigh in favor of termination and undisputed evidence of just one factor may be sufficient to support a finding regarding best interest. *In re C.H.*, 89 S.W.3d at 27. Evidence supporting a predicate ground may also support a finding that termination is in the best interest of the child. *Id.*

## C.    Analysis

### 1.    § 161.001(b)(1)(D) and (E)

By her third and fourth issues, F.M. argues that the Department presented "no evidence to support a finding" under Subsections (D) and (E), respectively. I disagree. At the time of the removal, F.M. was incarcerated for alleged burglary of a building, subsequently pleading guilty to misdemeanor theft. A.M.M. outcried to her mother that Meche, whom F.M. left the children with, had touched her breasts, butt, and vaginal area. The children, except for J.I.M.P., were living with the Girons when A.M.M. was abused. K.A.M. went to stay with a family friend for fear of also being assaulted by Meche. F.M. did not contest that A.M.M. made the outcry to her; rather, she downplayed it by saying Meche merely "disrespected her." Rangel testified that F.M. explained she intentionally

17

withheld the information from the Department to prevent the children being removed.

There can be no doubt that a child who is experiencing sexual assault is endangered, both physically and emotionally. *See In re E.A.G.*, 373 S.W.3d at 143. Further, such conduct endangers the other children in the home. *See id.* The evidence shows F.M. was aware of the outcry and intentionally withheld the information to allow the children to remain with the abuser. *See In re L.W.*, 609 S.W.3d at 200. Such evidence is legally and factually sufficient to support a finding that F.M. "knowingly allowed the child[ren] to remain in conditions or surroundings which endanger [their] physical or emotional well-being[,]" *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), and "knowingly placed the child[ren] with persons who engaged in conduct which endangers [their] physical or emotional well-being." *See id.* § 161.001(b)(1)(E); *In re J.F.C.*, 96 S.W.3d at 266.

The undisputed evidence also showed F.M. failed to secure proper treatment for A.M.M.'s prediabetes or A.M.M.'s and M.A.M.'s psychiatric needs. *See In re M.C.*, 917 S.W.2d at 270; *In re J.D.G.*, 570 S.W.3d at 852. A.M.M.'s untreated psychiatric needs led to her stabbing M.A.M. in the face and back with a pencil, undoubtedly endangering his physical well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). A.M.M.'s physical well-being was further endangered by her untreated prediabetes. *See In re J.D.G.*, 570 S.W.3d at 852. The evidence also showed that F.M. routinely failed to ensure the children attended school regularly, causing some of them to be held back twice, which endangers their emotional well-being. *See In re M.C.*, 917 S.W.2d at 270. F.M. further endangered J.I.M.P. by leaving him under the care of M.A.M. while he was suffering from untreated

psychiatric conditions. Finally, the initial investigation by the Department revealed that the children were living in unacceptable conditions, including a dirty home with holes in the walls and ceilings and without electricity, except that which they got from their neighbor. *See In re S.B.*, 597 S.W.3d at 584. In addition, F.M. failed to obtain and maintain psychiatric treatment for herself. *See Jordan v. Dossey*, 325 S.W.3d 700, 723–24 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) ("A parent's mental instability . . . may contribute to a finding that the parent engaged in a course of conduct that endangered a child's physical or emotional well-being."). Although each act alone may not necessarily be sufficient to support a finding that F.M. "engaged in conduct . . . which endanger[ed] the [children's] physical or emotional well-being[,]" together they show a "voluntary, deliberate, and conscious course of conduct by the parent" that constitutes neglect. *See* TEX. FAM. CODE. ANN. § 161.001(b)(1)(E); *In re A.L.H.*, 624 S.W.3d at 56. I would conclude that a reasonable factfinder could have formed a firm belief or conviction that F.M. engaged in the conduct described in Subsections (D) and (E). *See In re J.F.C.*, 96 S.W.3d at 266–67. F.M.'s third and fourth issues should be overruled.

"To affirm a termination judgment on appeal, a court need uphold only one termination ground—in addition to upholding a challenged best interest finding—even if the trial court based the termination on more than one ground." *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam). The Texas Supreme Court has held that sufficiency of the evidence supporting endangerment under Subsections (D) or (E) must always be reviewed when challenged on appeal, regardless of whether the evidence supporting termination under another statutory ground is sufficient. *Id.* at 237. Having done so, I need

not address F.M.'s fifth issue, which challenges the trial court's finding under Subsection (O). *See* TEX. R. APP. P. 47.1; *see also* TEX. FAM. CODE ANN. § 161.001(b)(1)(O) (providing predicate grounds for termination for a parent who fails to complete the court-ordered service plan when the children have been in the temporary or permanent conservatorship of the Department for at least nine months).

By her sixth issue, F.M. argues that termination was improperly based on evidence that she was economically disadvantaged. *See* TEX. FAM. CODE ANN. § 161.001(c)(2). While it is true that evidence was presented regarding F.M.'s economic status, such as F.M.'s difficulty obtaining and maintaining housing and employment and F.M.'s struggle to provide clean clothing so that the children could attend school, I would conclude that the termination was not based solely on such evidence. Rather, as detailed, F.M. routinely engaged in behavior, either overtly or by omission, which endangered the children's physical health or emotional well-being. Because there was ample evidence that a reasonable factfinder could have found clear and convincing to establish that F.M. endangered the children's physical and emotion well-being under Subsections (D) and (E), F.M.'s argument fails. *See In re J.T.G.*, 121 S.W.3d 117, 127 (Tex. App.—Fort Worth 2003, no pet.) (upholding termination where evidence supported jury's finding of endangerment, despite appellant's assertion that it was based on economic disadvantage). F.M.'s sixth issue should be overruled.

### 2. Best Interest

By her seventh issue, F.M. contends the evidence was legally and factually insufficient to support a finding that termination was in the children's best interest. In

support of her argument, F.M. contends there was limited or no evidence as to (1) the emotional or physical needs of the children, now and in the future; (2) the emotional and physical danger to the children, now and in the future; or (3) programs available to assist the individuals in promoting the children's best interest. Regarding the children's wishes, F.M. notes that the testimony reflected "the children missed their mother and looked forward to returning to her." Regarding the parental abilities of F.M., F.M. merely states that the evidence shows she wished to retain her parental rights and "did not have transportation because she lacked the financial resources." Regarding the stability of the proposed home, F.M. notes that the evidence "showed she was working as a provider, had a place to reside and was working with Tropical Texas to get a home through [the] PATH program." Regarding the acts or omissions by a parent that indicate the existing parent-child relationship is an improper one, F.M. summarizes the evidence, stating it showed she completed all her services and never tested positive for drugs and was never convicted of trespass or burglary to a building. Finally, regarding any acts or omissions committed by the parent, F.M. simply argues that she was economically disadvantaged and lacked support.

The evidence regarding the physical and emotional needs of the children, now and in the future, include A.M.M.'s continued need for treatment for prediabetes as well as M.A.M.'s need for psychiatric treatment. This is also true for their educational delays brought on by excessive absences from school. F.M.'s minimization of these needs and history of failing to address them demonstrate that she is either incapable or unwilling to meet the children's needs. This factor weighs in favor of termination.

21

I disagree there was no evidence of any emotional or physical danger to the children now or in the future. Evidence of F.M.'s history of endangering the children's physical or emotional well-being permits an inference that she may endanger the children in the future if returned to her care. *See In re M.D.M.*, 579 S.W.3d 744, 765 (Tex. App.—Houston [1st Dist.] 2019, no pet.). This factor weighs in favor of termination.

I also disagree that there was no evidence of programs available to assist F.M. in providing care for the children. The record reveals that F.M. was able to receive services that included mental health treatment, housing, and food assistance. However, F.M. failed to fully avail herself of the available assistance. Although F.M. contends she was seeking housing through the PATH program provided by Tropical Texas, Granado testified that F.M. had not sought the service. Granado further testified that although F.M. completed a psychological exam, the provider recommended psychiatric treatment for F.M., which she never received. However, the record clearly establishes that F.M. took advantage of the food assistance programs. Accordingly, this factor weighs only slightly in favor of termination.

Although the evidence does reveal the children missed F.M., it is not so clear that they "looked forward to returning to her." J.I.M.P.'s therapist testified that he expressed the desire to return to F.M. but was concerned about that desire because J.I.M.P. did not seem to understand who F.M. was to him. Further, the evidence showed that he typically reacted more favorably to his stepmother than F.M. and referred to F.M. as "[A.M.M.]'s mom" and his stepmother as "mom." A.M.M. did express her desire to return to her mother, but in the end, the other children were "okay" with F.M.'s rights being terminated.

22

A reasonable factfinder could have formed a firm belief or conviction that this factor weighed in favor of termination for M.A.M., K.A.M., J.G.M., J.E.M., and J.I.M.P. while weighing against termination in favor of A.M.M. *See In re J.F.C.,* 96 S.W.3d at 263, 266.

The evidence, as previously detailed, supports a finding that F.M.'s parenting abilities were lacking. Specifically, her home was routinely unsanitary, she failed to provide appropriate medical care for the children, neglected the children's educational needs, and did not take steps to protect her children after A.M.M. made an outcry of sexual abuse. This evidence also goes to the factor considering the parent's acts or omissions that indicate the existing parent-child relationship is improper. Although F.M. was not convicted of criminal trespass or burglary of a building, she pleaded guilty to theft charges stemming from the incident. Additionally, F.M. brought A.M.M. to commit the crime, causing A.M.M. to receive juvenile charges as well. F.M. asserts that Granado testified that she completed all her services, but a review of Granado's testimony reveals that F.M. failed to obtain psychiatric services as recommended, failed to pay child support, failed to attend all her visits with the children, and failed to complete family therapy. These factors weigh in favor of termination.

Although at trial F.M. testified that she was working as a provider, she estimated she had been working there for approximately four to six weeks. She further testified that she had at least four other jobs during the pendency of the case, each lasting about two weeks. Additionally, the evidence shows that prior to removal, F.M. lived in three separate homes with her children and another without them. Although F.M. "had a place to reside[,]" she did not have stable housing, as demonstrated by the need for housing assistance

23

through PATH. F.M. claims that Castillo testified that if F.M. had stable housing and employment his opinion "would change on whether the children should be returned to their mother[,]" but such a change has not occurred, and as such, he expressed concern about the prospect of the children returning. F.M.'s instability weighs in favor of termination.

Finally, F.M.'s sole excuse for any acts or omissions is that she is economically disadvantaged. As discussed *supra*, F.M.'s economic status does not excuse leaving the children in the home with somebody who sexually abused one of the children, failing to obtain proper medical care for the children, having an unsanitary home environment, or neglecting the children's educational needs to the significant detriment of the children. As such, this factor weighs in favor of termination.

Having reviewed the record, I would conclude that a reasonable factfinder could have formed a firm belief or conviction that termination of F.M.'s parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2); *In re A.C.*, 560 S.W.3d at 631; *In re J.F.C.*, 96 S.W.3d at 266. F.M.'s seventh issue should be overruled.

## IV. CONCLUSION

Accordingly, I would affirm the trial court's judgment.

CLARISSA SILVA
Justice

Delivered and filed on the
15th day of October, 2021.

24